NATHANIEL COOK, Indiv. and as Special Adm'r of the Estate of Mary Holiday, Deceased, Plaintiff-Appellant, v. EMMA BURNETTE, Defendant (Talman Home Federal Savings and Loan Ass'n *et al.*, Defendants-Appellees).

First District (4th Division)   No. 1—00—1289

Opinion filed June 26, 2003.

James K. Leven, of Chicago, for appellant.

Alan H. Zenoff and Jonathan P. Leleu, both of Zenoff & Zenoff, Chtrd., of Chicago, for appellee Talman Home Federal Savings and Loan Association.

Mary S. Binder, of Chicago, for appellee First National Bank of Chicago.

JUSTICE GREIMAN delivered the opinion of the court:

The present case arises from an order vacating an $800,000 default judgment against defendants Talman Home Federal Savings and Loan Association (FSB, predecessor to LaSalle Talman Bank, FSB, predecessor to LaSalle Bank, hereinafter LaSalle) and First National Bank of Chicago, now doing business as Bank One (Bank One). It originates from a wrongful death and survival action brought by plaintiff-appellant Nathaniel Cook, the special administrator of the estate of Mary Holiday, alleging damages sustained when she died in a house fire. The complaint named as defendants Emma Burnette, LaSalle, and Bank One, but only prayed for relief against Burnette, who is not a subject of this appeal. Both LaSalle and Bank One (collectively, the banks) did not appear or file answers to the complaint, and a default judgment for $800,000 was jointly and severally entered against them. Subsequently, LaSalle and Bank One petitioned the court to vacate the default judgment as being void. The trial court ruled that because there was no prayer for relief in the plaintiff's complaint as against LaSalle and Bank One (in the *ad damnum* clause), the default judgment entered against them was void. However, the court did not dismiss the complaint at law.

After the $800,000 judgment was deemed to be void, the banks filed for an involuntary dismissal of the complaint, and plaintiff filed his notice of appeal. The banks then filed a motion with this court to dismiss the appeal on the grounds that the order vacating the default judgment was not a final and appealable order. This court denied the motion to dismiss the appeal on the ground that an order granting a petition under section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401 (West 1998)) is appealable as of right. Both banks then filed a motion to reconsider on the grounds that their section 2—1401 petitions had been withdrawn. This court granted the motion

to reconsider the motion to dismiss the appeal, which was taken with this case. For the reasons that follow, we affirm.[1]

On November 28, 1995, Cook filed a complaint for wrongful death and survival against defendants Burnette, LaSalle, and Bank One. He alleged that the defendants negligently maintained and controlled certain real property in the City of Chicago. As a result of these negligent acts or omissions, a fire occurred which caused the death of Mary Holiday. Throughout the complaint, several allegations were made regarding the defendants' joint liability for Mary Holiday's death. However, in the prayer for relief, compensation was sought from only Ms. Burnette.

LaSalle was served with the summons and complaint on December 1, 1995, which LaSalle then forwarded to its parent company, ABN AMRO North America, Inc. Subsequently, the complaint and summons were misplaced. On May 16, 1997, the trial court entered an order defaulting LaSalle for a failure to answer or appear in this cause. LaSalle admits receiving a copy of that default order, but it did not file a responsive pleading to the complaint or a motion to vacate the order at that time and did not retain an attorney to appear on its behalf.

With regard to Bank One, it was individually served a summons and the complaint on December 7, 1995. Based on its business practices, it asserts, it tendered its defense of the action to LaSalle and the City of Chicago[2]. However, due to the passage of time, the destruction of documents and movement of personnel, Bank One was unable to locate any documents that confirmed its tender of its defense

---

[1]In our previous order, *Cook v. Burnette*, No. 1—00—1289 (2001) (unpublished order under Supreme Court Rule 23), we found that we lacked jurisdiction to reach the merits of this case and dismissed the appeal. On December 5, 2002, the Illinois Supreme Court vacated that order with directions to reconsider our ruling in light of the supreme court's subsequent decision in *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95 (2002). We now proceed under that directive.

[2]Regarding the city's involvement, Bank One relates that Burnette granted Talman (LaSalle) a mortgage lien against the property at issue to secure a $2,120.88 debt. Talman (LaSalle) then assigned its mortgage lien against the property to First Chicago (Bank One) pursuant to a note purchase agreement. First Chicago's (Bank One's) interest in the property then ceased and reverted to the City of Chicago following redemption of the bonds for which it served as trustee. Consequently, Bank One claims that its only interest in the property was solely as trustee of the assigned mortgage and that it never owned or controlled the property.

to LaSalle or the city. As with LaSalle, Bank One was defaulted on May 16, 1997, and also received a copy of the order.

The third defendant, Burnette, was served with an alias summons and complaint on June 27, 1996. On May 16, 1997, the court entered a default order against Burnette as well.

Finally, on June 26, 1997—the date the court set the cause for prove-up—the trial court entered a default judgment against all defendants, jointly and severally, in the amount of $800,000, for failing to appear.

On October 1, 1999, LaSalle filed a motion to vacate the default under section 2—1401 of the Code of Civil Procedure. The motion alleged that Cook fraudulently concealed the grounds for relief; that once the default judgment was entered, LaSalle acted with due diligence in bringing the motion; and that LaSalle had a meritorious defense to Cook's claim in that LaSalle held only a mortgagee's interest in the property at issue. The motion was subsequently stricken, at LaSalle's request, and on November 22, 1999, LaSalle was granted leave to file an amended motion.

On December 17, 1999, LaSalle filed an amended motion to vacate the default judgment. That motion was based on the fact that the default judgment entered against it on June 26, 1997, was void *ab initio*. It argued that Cook's failure to include LaSalle in the complaint's prayer for relief was a fatal flaw that rendered the judgment against LaSalle void; however, it did not use section 2—1401 as a basis for its argument. In addition to filing the amended motion to vacate the judgment, LaSalle also filed a section 2—619 motion, under the Code of Civil Procedure (735 ILCS 5/2—619 (West 1998)), to dismiss Cook's complaint alleging that it had no interest in the subject property and, therefore, no duty to inspect or maintain that property.

Earlier, on September 19, 1999, Bank One filed its own section 2—1401 petition to vacate as well. There, Bank One also argued that because Cook had fraudulently concealed the entry of the default judgment, its petition was timely even though the two-year limitations period of section 2—1401 had expired. Bank One also claimed that it had a meritorious defense because it only had an interest as trustee of an assigned mortgage in the property.

On November 22, 1999, Bank One filed an amended two-count petition to vacate the judgment. The first count alleged that the June 26, 1997, judgment was void for not complying with Supreme Court Rule 105 (134 Ill. 2d R. 105) because the prayer section of the complaint did not request monetary or any other relief from Bank One. If Cook wished to obtain relief from Bank One other than that indicated in the prayer, it argued, he needed to amend his complaint.

Further, it alleged that the complaint did not state a cognizable claim against Bank One, a mortgagee of the property. The second count requested that the judgment be vacated pursuant to section 2—1401.

Cook then filed motions to dismiss Bank One's and LaSalle's amended petitions pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1998)). However, before Judge Fleischman could rule upon these motions, he passed away. Consequently, the motions were transferred to Judge Varga, who heard them on March 16, 2000. On that date, Bank One moved *instanter* that the court deny Cook's motion against it on the grounds that the default judgment was void. Furthermore, it requested that it be allowed to withdraw count II, the section 2—1401 portion of its petition, and that the court grant count I of its amended petition to vacate the default judgment as void.

After extensive argument, the trial court granted both LaSalle's and Bank One's motions to vacate the default judgment of June 26, 1997. It reasoned that because Cook's complaint at law did not pray for any relief against LaSalle and Bank One, the default judgment entered against those defendants was void. The court also permitted Bank One to withdraw its section 2—1401 petition (count II) and did not rule on the legal sufficiency of that count. As previously stated, the court already allowed LaSalle to strike its initial section 2—1401 petition on November 22, 1999, and to file an amended petition that had no reference to section 2—1401.

On April 11, 2000, LaSalle filed a motion for involuntary dismissal of the complaint. On April 13, 2000, Cook filed his appeal of the trial court's grant of the defendant banks' amended petitions to vacate. On April 14, 2000, Bank One filed its own motion for involuntary dismissal of the complaint. The LaSalle and Bank One motions for involuntary dismissal were fully briefed and assigned to hearing before the trial court; however, the court placed the action on the stay calendar pending this appeal.

Bank One and LaSalle filed a joint motion with this court to dismiss the appeal on the grounds that the March 16, 2000, orders were not final and appealable orders. On July 6, 2000, this court denied their motion to dismiss the appeal on the grounds that "this court has jurisdiction over the appeal pursuant to Illinois Supreme Court Rule 304(b)(3)." Both Bank One and LaSalle filed motions to reconsider the dismissal of the appeal on the basis that the section 2—1401 portions of their amended petitions had been withdrawn, and thus, the trial court did not grant any relief under section 2—1401. The motions to reconsider were granted, and consequently, the defendant banks' motion to dismiss the appeal was taken with this case.

In our previous order, *Cook v. Burnette*, No. 1—00—1289 (2001) (unpublished order under Supreme Court Rule 23), we did not reach plaintiff's substantive argument. Based upon the Illinois Supreme Court's initial decision in *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95 (2001), we held that the trial court's order vacating the default judgment could not be characterized as a final, appealable order as is required under Supreme Court Rules 301 and 313 (155 Ill. 2d Rs. 301, 303 (appeal from a final order)). Moreover, we found that because the trial court's order was not akin to and did not constitute the grant of a section 2—1401 motion, it would not be considered a new action directly appealable under Supreme Court Rule 304(b)(3). 155 Ill. 2d R. 304(b)(3).

On July 3, 2002, after rehearing the arguments on the matter, the supreme court, in a new opinion, found that an order granting a motion to vacate a judgment as void was actually an order granting a motion that, in substance, was a section 2—1401 motion. *Sarkissian*, 201 Ill. 2d at 105. Accordingly, the court in *Sarkissian* held that "any order granting or denying such relief is a final ruling, appealable pursuant to Supreme Court Rule 304(b)(3) (155 Ill. 2d R. 304(b)(3))." *Sarkissian*, 201 Ill. 2d at 105.

■ Thereafter, on December 5, 2002, the Illinois Supreme Court vacated our previous order in *Cook*, with directions to reconsider our ruling in light of the supreme court's subsequent decision in *Sarkissian*. Because *Sarkissian* clearly holds that we are to construe the banks' petitions to vacate the default judgment as valid section 2—1401 motions, we must also construe the trial court's grant of those petitions as a final, appealable order under Rule 304(b)(3). Consequently, we deny the defendant banks' motions to dismiss and now consider the merits of plaintiff's arguments.

■ Plaintiff first asserts that the LaSalle and Bank One petitions to vacate the June 26, 1997, judgment are time-barred. For this, plaintiff notes that section 2—1401 contains a two-year limitations provision:

> "[T]he petition must be filed not later than 2 years after the entry of the order or judgment. Time during which the person seeking relief is under legal disability or duress or the ground for relief is fraudulently concealed shall be excluded in computing the period of 2 years." 735 ILCS 5/2—1401(c) (West 1998).

Further, a section 2—1401 petition must set forth a meritorious defense to the original action as well as the petitioner's due diligence in both presenting the defense and the filing of the petition. See *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986). However, plaintiff claims, a trial court lacks discretion to even consider a section 2—1401

petition if the petition is not timely filed. *Selvy v. Beigel,* 309 Ill. App. 3d 768 (1999); *Bank of Ravenswood v. Domino's Pizza, Inc.,* 269 Ill. App. 3d 714, 726 (1995) (a petition that is not filed within the two-year limitations period is barred from consideration on the merits); *Crowell v. Bilandic,* 81 Ill. 2d 422, 427-28 (1980) (the purpose of the two-year limitations period is to establish stability and finality in judicial proceedings).

■ In the present case, LaSalle filed its section 2—1401 petition on October 1, 1999, and its amended petition on December 17, 1999. Bank One filed its original petition on September 17, 1999, and its amended petition on November 22, 1999. Under *Sarkissian,* because all of these petitions sought to vacate the trial court's judgment as void, regardless of how they were labeled, they must be construed as section 2—1401 motions and subjected to the limitations of that section. Therefore, because none of these petitions were filed within two years of the June 26, 1997, judgment, plaintiff concludes that they are all time-barred.

*Sarkissian,* we note, dealt with a similar situation in which a party brought a motion to vacate a void judgment more than seven years after the default judgment was entered. The court noted that, until recently, it had not spoken on the issue of whether motions attacking void judgments could be construed as section 2—1401 motions. *Sarkissian,* 201 Ill. 2d at 104. However, in noting that four members of the court in *People v. Harvey,* 196 Ill. 2d 444, 453 (2001), held that a motion to vacate a void judgment is properly designated a petition for relief from judgment under section 2—1401, the court then looked to the language of section 2—1401:

"Pursuant to *Harvey,* paragraph (f) of section 2—1401, which provides, 'Nothing contained in this Section affects any existing right to relief from a void order or judgment, or to employ any existing method to procure that relief,' does not exclude, but merely differentiates, post-judgment petitions brought on voidness grounds from general section 2—1401 petitions. See 735 ILCS 5/2—1401(f) (West 2000). Under paragraph (f), the general rules pertaining to section 2—1401 petitions—that they must be filed within two years of the order or judgment, that the petitioner must allege a meritorious defense to the original action, and that the petitioner must show that the petition was brought with due diligence—do not apply. Petitions brought on voidness grounds need not be brought within the two-year time limitation. Further, the allegation that the judgment or order is void substitutes for and negates the need to allege a meritorious defense and due diligence. *People v. Harvey,* 196 Ill. 2d 444, 452 (2001) (McMorrow, J., specially concurring, joined by Freeman, J.)." *Sarkissian,* 201 Ill. 2d at 104.

The court then pointed out that paragraph (a) of section 2—1401 prohibits all other common law methods of attacking void judgments[3], and that nowhere else in the Code of Civil Procedure does the legislature allow for the filing of a motion to challenge a judgment on voidness grounds. *Sarkissian*, 201 Ill. 2d at 105. Accordingly, the court concluded that the petition seeking to void the trial court's judgment

> "was one which sought post-judgment relief under section 2—1401 and could validly be brought outside the two-year limitations period. Also, there was no need for the Board to establish that it had acted with due diligence or to allege that a meritorious defense existed. Because the *** motion was a valid section 2—1401 motion, the trial court's order granting the *** motion to vacate is, pursuant to Supreme Court Rule 304(b)(3), a final, appealable order." *Sarkissian*, 201 Ill. 2d at 105.

In the case at bar, we already have found that *Sarkissian* compels a finding that the banks' petitions are to be construed as section 2—1401 motions and that the trial court's order granting them is final and appealable under Rule 304(b)(3). In addition, because the banks' petitions were filed for the purpose of seeking to vacate a void order, we must categorize them as section 2—1401(f) motions. And according to *Sarkissian*, section 2—1401(f) motions to vacate void orders are no longer amenable to the due diligence, meritorious defense, or two-year time requirement. Therefore, plaintiff's argument that the banks' motions were untimely is simply not well-taken.

Next, plaintiff asserts that the trial court erred in finding that the $800,000 default judgments against the defendant banks were void for three reasons: (1) the trial court failed to consider the complaint in its entirety, where it looked only to the *ad damnum* clause in reaching its conclusion; (2) the banks' conduct after being served with the complaint shows they knew that plaintiff was seeking relief from them; and (3) it was contrary to the public policy of protecting the stability and finality of judgments.

First, plaintiff notes that it is well established that a complaint must be considered as a whole and not in its disconnected parts.

---

[3]Paragraph (a) of section 2—1401 provides in pertinent part:

" 'Writs of error coram nobis and coram vobis, bills of review and bills in the nature of bills of review are abolished. *All relief heretofore obtainable and the grounds for such relief heretofore available, whether by any of the foregoing remedies or otherwise, shall be available in every case, by proceedings hereunder,* regardless of the nature of the order or judgment from which relief is sought or of the proceedings in which it was entered.' (Emphasis added.) 735 ILCS 5/2—1401(a) (West 2000)." *Sarkissian*, 201 Ill. 2d at 104-05.

*Denkewalter v. Wolberg*, 82 Ill. App. 3d 569, 572 (1980). Put another way, plaintiff claims, "[t]o see if a cause of action has been stated the whole complaint must be considered, rather than taking a myopic view of a disconnected part." *People ex rel. Scott v. College Hills Corp.*, 91 Ill. 2d 138, 145 (1982), citing *Stenwall v. Bergstrom*, 398 Ill. 377 (1947). Therefore, plaintiff claims, the trial court erred in focusing entirely on the absence of the banks' names from the *ad damnum* clause and in failing to address whether the body of the complaint reasonably informed the banks that the plaintiff was seeking to impose monetary liability against them.

The trial court's interpretation, plaintiff asserts, is also contrary to established case law. See *Charles v. Gore*, 248 Ill. App. 3d 441, 449 (1993) (a default judgment was not void, although complaint did not ask for specific monetary relief); *Joseph A. Thorsen Co. v. Evans*, 82 Ill. App. 3d 1119 (1980) (default judgment in compensatory damages was not void even though the complaint did not *per se* request a specific amount in compensatory damages). Therefore, in properly looking at the entire complaint, plaintiff argues that we should find that the defendant banks had adequate notice of the potential of the imposition of monetary damages against them, that the banks could not have been surprised by the default judgment, and that the trial court's entry of that default judgment was in no way void.

In addressing the body of the complaint, plaintiff directs us to paragraph 10 of the wrongful death count of his complaint, which alleges that the decedent's next of kin "suffered great losses of a personal and pecuniary nature *** and other pecuniary damages that they would have enjoyed but for the wrongful death of the decedent; subjecting the defendants to liability pursuant to [what is] commonly referred to as the Wrongful Death Act." Moreover, paragraph 10 of his survival count asserts "that as a direct and proximate result of one or more of the aforementioned acts or omissions of the Defendant, the plaintiff's decedent, MARY HOLIDAY, did suffer serious injuries of a personal and pecuniary nature ***; subjecting the Defendants to liability pursuant to [what is] commonly referred to as the Survival Act." Therefore, because both of the counts specifically referred to the defendants in the plural, all three defendants were on notice that they were potentially liable to the plaintiff.

Plaintiff also points to the remaining allegations in the complaint, which are all directed against Bank One and LaSalle and purportedly satisfy all the requirements necessary for alleging a cause of action in wrongful death and a survivor action, to establish that the banks had received sufficient notice. In fact, plaintiff notes, both counts allege that the banks had a duty of reasonable care, breached that duty, and

that the breach proximately caused the decedent's injuries and death, resulting in pecuniary damages. See *Leavitt v. Farwell Tower Ltd. Partnership*, 252 Ill. App. 3d 260, 264 (1993) (recounting the essential elements for maintaining a cause of action under the Wrongful Death Act). Therefore, plaintiff concludes, where the complaint provided enough information to indicate a ground for liability, and the *ad damnum* clause included a prayer for relief in excess of $30,000, it provided enough information to support a judgment. See *Parrino v. Landon*, 8 Ill. 2d 468, 473 (1956).

As an aside, plaintiff notes that the May 16, 1997, default order and letter that was sent to the banks also put them on notice of the possibility of a substantial monetary judgment. The letter stated:

"Please be advised that all defendants in the above captioned lawsuit have been deemed in default, and this matter is currently scheduled for a prove-up on June 26, 1997 at 9 a.m. I enclose a copy of the Court Order entered on May 16, 1997 in this regard."

In light of the evidence that both banks received a copy of the default order and plaintiff's accompanying letter, plaintiff argues that both banks had the requisite notice that they were in default, yet allowed the default judgment to be entered anyway.

■ The banks respond by noting the language of section 2—604 of the Illinois Code of Civil Procedure (735 ILCS 5/2—604 (West 1994)), which provides in pertinent part:

"*Except in case of default*, the prayer for relief does not limit the relief obtainable, but where other relief is sought the court shall, by proper orders, and upon terms that may be just, protect the adverse party against prejudice by reason of surprise. In case of default, if relief is sought, whether by amendment, counterclaim, or otherwise, beyond that prayed in the pleading to which the party is in default, notice shall be given the defaulted party as provided by rule." (Emphasis added.) 735 ILCS 5/2—604 (West 1994).

Therefore, the banks assert, a defendant actually may properly choose not to defend an action and to take a default in reliance on the *ad damnum* in a complaint and has a right to presume that no further relief will be awarded without notice. See *Park Avenue Lumber & Supply Co. v. Hofverberg, Inc.*, 76 Ill. App. 2d 334, 345 (1966).

■ Moreover, the banks assert that the right to rely on the content of the *ad damnum* clause is protected by Supreme Court Rule 105, which provides:

"The notice [as required by section 2—604] shall be captioned with the case name and number and shall be directed to the party. It shall state that a pleading seeking new or additional relief against him has been filed and that a judgment by default may be taken

against him for the new or additional relief unless he files an answer or otherwise files an appearance *** within 30 days after service ***." 134 Ill. 2d R. 105.

As the banks note, Rule 105 was designed to prevent a litigant from obtaining new or additional relief without giving the defaulted party a renewed opportunity to appear and defend. See *Palatine Savings & Loan Ass'n v. National Bank & Trust Co. of Sycamore*, 80 Ill. App. 3d 437, 440 (1980), citing *Grover v. Franks*, 27 Ill. App. 3d 900 (1975). As such, in cases of default, a court that grants an award in excess of the *ad damnum* without prior notice to the defendant exceeds its authority, and that portion of the decree in excess of the *ad damnum* is void. See *Dils v. City of Chicago*, 62 Ill. App. 3d 474, 482 (1978) (the law is well settled that a party has the right to assume that the relief granted on a default will not exceed or substantially differ from that asked for in the complaint, as "cases have uniformly held that in cases of default the trial court in granting an award in excess of the *ad damnum* exceeds its authority"); *Gore*, 248 Ill. App. 3d at 449.

■ In the present case, the *ad damnum* clauses for both counts in the complaint "pra[y] judgment on behalf of the next-of-kin, against defendant, EMMA BURNETTE, in a sum of money in excess of THIRTY THOUSAND DOLLARS ($30,000.00), plus costs," but did not request money or other judgment against the banks. Moreover, the record reveals that the plaintiff did not amend the complaint to request any monetary relief from the banks and did not comply with Rule 105. Therefore, the banks conclude, the $800,000 default judgment entered against them is void, and the March 16, 2000, order vacating that judgment should be affirmed.

During argument of the plaintiff's section 2—615 motions to dismiss the banks' respective amended petitions to vacate the $800,000 defaults, Judge Varga commented:

"You need a wherefore clause to say who you want to collect against. You didn't do it. It is not there ***. So that judgment is void as to these two defendants. It's simple, it's clear, and it's black and white to me ***. They were never notified, told that a dime was going to come from them ***. If you want to tag some[one] for dollars, you have to put the person or entity's name in the wherefore clause."

Such sentiment, we find, accurately reflects the rigor that Supreme Court Rule 105 adds to the construction of section 2—604. For even finding, as we do, that the plaintiff is correct in stating that the purpose of section 2—604 is simply to put parties on notice of the relief being sought against them, in order for that notice to be proper as to new or additional defaulted parties, the plaintiff also must comply fully with the strict notice requirements of Rule 105.

We also find the good majority of the cases plaintiff cites in his brief involve only the sufficiency of the allegations within the complaint (*Johnson v. Illini Mutual Insurance Co.*, 18 Ill. App. 2d 211 (1958); *People ex rel. Scott v. College Hills Corp.*, 91 Ill. 2d 138 (1982); *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54 (1994)), or make no mention of the complete failure of a plaintiff to pray for any relief whatsoever against a defendant (*Klein v. Steel City National Bank*, 212 Ill. App. 3d 629 (1991); *Charles v. Gore*, 248 Ill. App. 3d 441 (1993); *Joseph A. Thorsen Co. v. Evans*, 82 Ill. App. 3d 1119 (1980)). Moreover, *Wong v. Stevens*, 216 Ill. App. 3d 299 (1991), did not even involve a default judgement, as the defendant had appeared and argued the elements of the case.

Accordingly, we disagree with plaintiff's contention that pleading the *prima facie* elements of his causes of actions substitutes for, or excuses him from, compliance with Rule 105. See *Park Avenue Lumber*, 76 Ill. App. 2d 334 (court vacated as void a portion of a default order in a mechanic's lien action barring the collection of a debt, even though the pleadings alluded to a debt running to a defaulted party, because the complaint did not request that the party be barred from making a claim for money due it); *Palatine Savings & Loan*, 80 Ill. App. 3d at 437-40 (court vacated as void a default judgment for failure to comply with Rule 105 despite a general prayer for relief of a deficiency judgment and a copy of the defendant's consent to the deficiency judgment which was attached as an exhibit to the complaint, because the complaint did not request a deficiency judgment from the defaulted party). Ultimately, after reviewing the record in this case, we find no evidence that plaintiff has, in fact, complied with Rule 105. In fact, it is undisputed that plaintiff never submitted a Rule 105 letter to either of the banks, as he never sought to amend his complaint. Accordingly, plaintiff's argument must fail.

For the same reasons that plaintiff is unable to meet Rule 105's requirements through a liberal reading of his complaint, his argument that "the banks' conduct after being served with the complaint shows they knew that plaintiff was seeking relief from them" is equally untenable. Regardless of what either of the banks or the banks' officers "knew" about plaintiff's complaint, the fact remains that the complaint simply did not pray for relief against them. And where plaintiff never sought to amend his complaint or give notice pursuant to Rule 105 that the banks were being added as entities from which the plaintiff was potentially seeking relief, plaintiff again cannot demonstrate his compliance with Rule 105.

Lastly, plaintiff contends that "[i]t is the public policy of our courts to give the stability and finality of judgments more weight than the

validity of judgments." And, in light of the fact that the banks brought their petition to vacate more than two years after section 2—1401's time requirement, plaintiff asserts that the defendant banks should not be able to circumvent those time restrictions simply by seeking to declare the judgment void. We note that the supreme court in *Sarkissian* expressly held that any petitions brought on voidness grounds are not subject to the two-year time limitation and are not required to assert a meritorious defense or due diligence. Thus, it appears the supreme court has placed a greater emphasis on the importance of correcting void orders than on the concern of "undermin[ing] the stability of judgments" and "open[ing] the flood gates to litigation." As this is one of those instances where a party has brought a motion to vacate on voidness grounds, plaintiff's argument is not well taken.

For the foregoing reasons, we affirm the decision of the circuit court of Cook County.

Affirmed.

QUINN and REID, JJ., concur.