*In re* CUSTODY OF JESSICA AYALA (Luis Ayala, Jr., Petitioner-Appellee, v. Wanda Lozada, Respondent-Appellant).

First District (3rd Division) No. 1—02—2093

Opinion filed November 12, 2003.

Legal Assistance Foundation of Metropolitan Chicago, of Chicago (David

E. Haracz, Richard Cozzola, Diana White, and Catherine Cornell, of counsel), for appellant.

Jerome M. Kaplan, of Chicago, for appellee.

JUSTICE KARNEZIS delivered the opinion of the court:

Petitioner Luis Ayala, Jr. (Luis), and respondent Wanda Lozado (Wanda) are the unmarried parents of Jessica Ayala (Jessica) and are engaged in a custody battle over Jessica. In 1998, the court awarded temporary custody of Jessica to Luis and visitation rights to Wanda. In June 2001, Luis was convicted and jailed for conspiracy to sell drugs. That same month, the court entered four orders in the parties' custody case which, among other findings and directives, joined Luis's wife and parents as parties to the proceedings and granted them joint custody of Jessica with Luis. Pursuant to section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401 (West 2000)), Wanda moved to vacate the four orders as void *ab initio* and immediately turn Jessica over to Wanda (motion to vacate). The court denied the motion, finding that no section 2—1401 petition was before it and that Wanda's motion to vacate was untimely filed. Wanda appeals pursuant to Supreme Court Rule 304(b)(3) (155 Ill. 2d R. 304(b)(3)), arguing that the court erred in denying her motion to vacate and in failing to interpret it as a petition filed pursuant to section 2—1401. She requests that we (1) reverse the court's June 14, 2002, order denying her motion to vacate and (2) find void and vacate the court's June 20, 2001, orders joining Luis's wife and parents as additional parties and awarding them joint co-custodial care of Jessica. Luis and his parents filed a motion to dismiss the appeal, arguing that the court's order denying Wanda's motion to vacate was not a final order and, therefore, the case is not ripe for appeal. Taking the motion to dismiss with the case, we find that we have jurisdiction to consider the appeal. We reverse and remand.

## BACKGROUND

In April 1995, Luis filed a verified paternity complaint stating that he was Jessica's father and requesting joint legal custody of her. On August 21, 1998, the court awarded temporary custody of Jessica to Luis and visitation rights to Wanda. In June 2000, Luis was arrested for conspiracy to sell drugs. In July 2000, Wanda filed an emergency petition requesting that the court grant her temporary and permanent care and custody of Jessica given Luis's arrest. The court struck the petition. Wanda then apparently filed an amended petition requesting the same relief because, although the record does not contain a copy of that petition, it does contain Luis's September 11, 2000, response to

it. The court ordered the parties to present an agreed order regarding custody. On April 12, 2001, when the parties could not come to agreement regarding custody, Wanda filed a *pro se* motion for modification of custody due to the significant change in circumstances occasioned by Luis's now-imminent incarceration.

On May 2, 2001, Luis filed a petition for diverse relief requesting leave to join his wife and parents as additional parties to the proceedings, leave to file custody interrogatories in excess of 30 questions, that the court *sua sponte* declare that Illinois is Jessica's home state, and that Wanda be required to pay child support. Luis asserted that Wanda was an unfit custodial parent who had abandoned Jessica to his parents' custodial care on multiple occasions; Jessica had been in the *de facto* custody of his wife and parents and his legal custody, as an extended family unit, for the past two years; joinder of his wife and parents as additional parties was warranted because they had been acting as parents and the court needed to have jurisdiction over them; and his incarceration was an insufficient change in circumstances to warrant modifying Jessica's custody.

On May 7, 2001, the court declared Illinois to be Jessica's home state; granted Luis leave to file the custody interrogatories; granted Wanda 28 days in which to respond to the interrogatories and Luis's petition for diverse relief; reserved ruling on the joinder issue; and continued the case for status to May 30, 2002.

On May 22, 2001, Luis, his wife and his parents filed a motion requesting leave to join his wife and parents as additional parties and that the court *sua sponte* declare Illinois to be Jessica's home state, reiterating the same arguments as in Luis's earlier petition for diverse relief. On May 30, 2001, the court *sua sponte* ordered that the continued care and possession of Jessica by Luis and the "proposed intervenors," his wife and parents, would "remain status quo" until further order with all prior orders to remain in full force and effect. The court granted Wanda 28 days to respond to the May 22, 2001, joinder petition and continued the joinder issue until July 24, 2001.

In June 2001, Luis was convicted and sentenced to 80 months' imprisonment for conspiracy to sell drugs. That same month, with Luis's permission, Wanda took Jessica to Wanda's home in Iowa for a visit. Wanda did not return Jessica to Illinois by the agreed date of June 10, 2001, requesting instead that Luis allow Jessica to remain in Iowa for a few more days. On June 12, 2001, Luis filed an emergency petition for an order of default for Wanda's failure to respond within 28 days to his interrogatories, petition for diverse relief, and joinder petitions; cessation of unsupervised visitation; petition for rule to show cause and visitation abuse; and a finding of indirect civil contempt.

On June 12, 2001, the court (1) ordered Wanda to return Jessica to Luis that day; (2) made the rule to show cause returnable *instanter* based upon a finding that Wanda removed Jessica to Iowa in violation of three prior court orders[1] and ordered Wanda to appear before the court on June 13, 2001, for a hearing on indirect civil contempt and sanctions; (3) enjoined Wanda from removing Jessica from Illinois without a specific order of court; and (4) continued all other matters pertaining to Luis's emergency petition to June 13, 2001.

On June 13, 2001, the court was unavailable and by "agreed order" continued all matters to June 20, 2001. Wanda was not present for the June 20, 2001, hearing. She asserts that she did not agree to the June 20, 2001, hearing date and that she called Luis's attorney and the court clerk on June 20, 2001, to explain that she could not attend the hearing that day.

On June 20, 2001, the court entered two orders. In the first order, entered pursuant to Luis's petition for joinder of additional parties, the court struck the July 24, 2001, date scheduled for a hearing on the joinder motion, granted Luis leave to join his wife and parents as additional parties *instanter* and declared Illinois to be Jessica's home state.

The court entered the second order pursuant to the prior return of the rule to show cause against Wanda for violation of the court's prior orders and failing to comply with the court's *sua sponte* order to return Jessica to Illinois within the time prescribed, failing to personally appear in court for the hearing on indirect civil contempt on June 13, 2001, and failing to appear on June 20, 2001. The court again ordered that Luis's wife and parents be joined as parties to the cause of action *instanter* and noted their stipulation to the court's jurisdiction over them. With Luis's agreement as Jessica's custodial caregiver, as an implementation of the court's order to maintain the status quo as to

---

[1]The prior court orders at issue were an August 21, 1998, order awarding Luis temporary custody of Jessica and setting forth the terms of Wanda's biweekly weekend visits with Jessica; an August 1, 2000, order stating that the August 21, 1998, order remained in full force and effect and prohibiting the parties from removing Jessica from the court's jurisdiction except for summer visitation as set forth in the order; and the May 30, 2001, order stating that all prior orders remained in full force and effect and that care and possession of Jessica was to remain status quo.

Not mentioned in the June 12, 2001, order is an agreed order entered on September 15, 2000, giving Wanda permission to exercise her biweekly weekend visits with Jessica in Iowa. Wanda moved to Iowa in 2000. Pursuant to the order, Wanda was to return Jessica to Luis by 7 p.m. on the Sunday of these weekend visits. June 10, 2001, was such a Sunday.

Jessica's residential care, education and activities, the court granted joint co-custodial care of Jessica to Luis's wife and parents until further order of the court. The court granted Wanda "reasonable" overnight visitation with Jessica in Cook/Du Page County, Illinois, during August 2001. The court entered an order of default against Wanda for failure to comply with orders as to filing of responsive pleadings within the time prescribed, found that she failed to answer custody interrogatories, and continued all pending matters to August 22, 2001, including sanctions for Wanda's failure to answer custody interrogatories.

On October 24, 2001, Wanda filed a motion for permanent custody of Jessica.

On December 13, 2001, Wanda filed a section 2—1401 motion to vacate the four orders entered on June 12, 2001, June 13, 2001, and June 20, 2001, arguing that the orders were void *ab initio* for, among other defects, lack of jurisdiction. In the motion, Wanda avers that she returned Jessica to Luis on the night of June 12, 2001, or the morning of June 13, 2001, and that she was in court on June 13, 2001. Wanda, who allegedly appeared *pro se* on June 13, 2001, asserts that Luis's counsel did not consult her prior to drafting and entering the "agreed" order continuing the case to June 20, 2001; she was unavailable on June 20, 2001; she did not agree to the June 20, 2001, date; she did not sign the agreed order; and, when she asked Luis's counsel to select another date, counsel allegedly retorted "that's not my problem," and left the courtroom. Wanda also notes that the "agreed" order does not reflect that she was in court on June 13, 2001, and that she had already returned Jessica as ordered.

Luis filed a motion to strike Wanda's motion to vacate. The court struck the motion but granted Wanda leave to refile. Wanda filed a second motion to vacate the four orders on March 6, 2002. Luis filed a motion to strike it. On June 14, 2002, the court entered an order denying both Wanda's motion to vacate and Luis's motion to strike and continued the case for a status hearing three months later.

The court noted that it held an extensive pretrial conference with the parties to review the challenged orders. The court then stated, without objection, that "no motion was filed within 30 days to vacate said orders. There is no pending petition relative to 5/2—1401." The court continued "[b]ased upon the arguments of counsel on behalf of Wanda Lozado who appeared in court that said orders were not void ab initio; therefore a pleading needed to be filed within 30 days or within two years neither of which have been done to this date. As a result, the motion of Respondent Wanda Lozado to vacate said orders is denied." Wanda appeals the court's order denying her motion to

vacate and requests that we hold void and vacate the two June 20, 2001, orders. She does not request relief with regard to the July 12, 2001, and July 13, 2001, orders. Luis and his parents (hereinafter referred to in the singular as Luis) contest our jurisdiction to consider the appeal. Given that Luis did not appeal the court's denial of his motion to strike, we will not address whether the court was correct in denying the motion to strike or the merits of that motion.

## MOTION TO DISMISS APPEAL

■ Luis argues that, when the court filed its June 14, 2002, order denying Wanda's motion to vacate, there were still matters pending before the court and the denial order was, therefore, not final for purposes of appeal pursuant to Supreme Court Rules 301, 303, and 304 (155 Ill. 2d Rs. 301, 303, 304) and case law. Citing to *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 776 N.E.2d 195 (2002), Wanda responds that the order denying her section 2—1401 motion to vacate is appealable pursuant to Supreme Court Rule 304(b)(3). In *Sarkissian*, our supreme court held that a trial court's ruling on a section 2—1401 petition is deemed a final order and immediately reviewable pursuant to Supreme Court Rule 304(b)(3), which provides "that appeal may be taken from 'a judgment or order granting or denying any of the relief prayed in a petition under section 2—1401 of the Code of Civil Procedure.' " *Sarkissian*, 201 Ill. 2d at 102, 776 N.E.2d at 200, quoting 155 Ill. 2d R. 304(b)(3); accord *S.C. Vaughan Oil Co. v. Caldwell, Troutt & Alexander*, 181 Ill. 2d 489, 496-97, 693 N.E.2d 338, 342-43 (1998).

■ Wanda filed her second motion to vacate the four orders within one year of entry of the orders. Her motion clearly stated that she was moving to vacate "pursuant to 735 ILCS 5/2—1401, and in the alternative, pursuant to common law." Section 2—1401 authorizes relief from a final judgment more than 30 days but within 2 years after judgment has been entered. *Sarkissian*, 201 Ill. 2d at 101-02, 776 N.E.2d at 200; 735 ILCS 5/2—1401(a) (West 2000). Without explanation, the trial court stated that it did not have a section 2—1401 petition before it. The court, therefore, denied Wanda's motion to vacate the orders as untimely because she filed the motion more than 30 days after entry of the orders.

■ The character of a pleading is determined from its content, not its label. *Sarkissian*, 201 Ill. 2d at 102, 776 N.E.2d at 200-01. Given that the challenged orders were not final[2] as required by section 2—1401, the court arguably could have determined that section

---

[2]Final orders "resolve a separate and distinct part of the controversy,

2—1401 was not the appropriate procedure by which to seek relief from the orders. However, our supreme court has held that a petition seeking relief from a void judgment is to be considered a section 2—1401 petition, albeit not subject to the timeliness and due diligence requirements of section 2—1401. *Sarkissian*, 201 Ill. 2d at 104-05, 776 N.E.2d at 201-02. The fact that Wanda challenged the orders solely on the basis of voidness was sufficient for the court to construe her motion to vacate as a valid section 2—1401 motion. *Cook v. Burnette*, 341 Ill. App. 3d 652, 660, 793 N.E.2d 160, 166 (2003), following *Sarkissian*, 201 Ill. 2d at 104-05, 776 N.E.2d at 201-02. The court erred in finding that Wanda's motion to vacate was not a section 2—1401 petition.

A court's determination of a motion to vacate on voidness grounds, regardless of whether that motion is titled a section 2—1401 petition, is considered, in substance, a determination of a section 2—1401 petition. *Cook*, 341 Ill. App. 3d at 660, 793 N.E.2d at 166; *Sarkissian*, 201 Ill. 2d at 104-05, 776 N.E.2d at 201-02. Since petitions seeking relief from void judgments are section 2—1401 petitions, "any order granting or denying such relief is a final ruling, appealable pursuant to Supreme Court Rule 304(b)(3) (155 Ill. 2d R. 304(b)(3))." *Sarkissian*, 201 Ill. 2d at 105, 776 N.E.2d at 202. Accordingly, the court's denial of Wanda's motion to vacate is a final determination appealable pursuant to Supreme Court Rule 304(b)(3) and we have jurisdiction to consider this appeal. *Cook*, 341 Ill. App. 3d at 660, 793 N.E.2d at 166; *Sarkissian*, 201 Ill. 2d at 105, 776 N.E.2d at 202.

### Court's Denial of Wanda's Motion to Vacate

■ The trial court has discretion whether to grant a section 2—1401 petition, and we will not disturb the court's judgment absent an abuse of that discretion. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 221, 499 N.E.2d 1381, 1386 (1986). Here, however, the court did not address the bases for Wanda's motion to vacate. Rather, the court found her motion untimely and denied it on that basis. This was error.

■ We note initially that Wanda did timely file her section 2—1401 motion within two years of entry of the challenged orders. More importantly, however, Wanda moved to vacate the orders on the basis

conclude the litigation on the merits, or dispose of the parties' rights in relation to all or part of the controversy." *Physicians Insurance Exchange v. Jennings*, 316 Ill. App. 3d 443, 455, 736 N.E.2d 179, 188 (2000). An examination of the challenged orders shows that they do not resolve a separate part of the controversy, let alone conclude the litigation on the merits. As noted previously, there are continuing issues in the case that remain to be addressed, such as the permanent custody of Jessica.

that they were void for lack of subject matter and personal jurisdiction. Such attacks have no time limit. *Lebanon Trust & Savings Bank v. Ray*, 10 Ill. App. 3d 345, 348, 293 N.E.2d 623, 625 (1973).

> " 'A judgment, order or decree entered by a court which lacks jurisdiction of the parties or of the subject matter, or which lacks the inherent power to make or enter the particular order involved, is void, and may be attacked at any time or in any court, either directly or collaterally.' " *Sarkissian*, 201 Ill. 2d at 103, 776 N.E.2d at 201, quoting *Barnard v. Michael*, 392 Ill. 130, 135, 63 N.E.2d 858, 861-62 (1945).

As *Sarkissian* makes clear, a motion for relief from a void judgment, although considered a section 2—1401 petition, is not subject to the timeliness requirements of section 2—1401 and need not be brought within the statute's two-year time limitation. *Sarkissian*, 201 Ill. 2d at 103-04, 776 N.E.2d at 201-02. Therefore, the court's determination that Wanda's motion to vacate void orders was untimely was clearly erroneous. *Cook*, 341 Ill. App. 3d at 665, 793 N.E.2d at 169; *Lebanon Trust & Savings Bank*, 10 Ill. App. 3d at 348, 293 N.E.2d at 625.

### Wanda's Voidness Allegations

Having found that the court erred in denying Wanda's section 2—1401 motion to vacate as untimely, we now address Wanda's allegations that the two June 20, 2001, orders are void *ab initio*. Wanda argues that the orders are void because (1) the court did not have subject matter jurisdiction to enter an order granting joint co-custody to Luis's wife and parents because no pleading requested this relief; (2) Wanda's due process rights were violated because she had no notice that awarding co-custody of Jessica to Luis's wife and parents was an issue or that either joinder or custody would be determined on June 20, 2001; (3) the court lacked personal jurisdiction over Luis's wife and parents because they were misjoined; and (4) as third parties, Luis's wife and parents lacked standing to seek custody because Wanda did not voluntarily relinquish custody to them.

■ As stated above, a void order is one entered by a court lacking personal or subject matter jurisdiction or the inherent power to make and enter that order and may be attacked directly or collaterally. *Sarkissian*, 201 Ill. 2d at 103, 776 N.E.2d at 201. Here, Wanda collaterally attacked the orders, filing her motion to vacate more than 30 days after entry of the orders. *Barnard*, 392 Ill. at 135, 63 N.E.2d at 862. To support a collateral attack, the jurisdictional defect must be apparent from the face of the record at the time that the challenged order was entered. *JoJan Corp. v. Brent*, 307 Ill. App. 3d 496, 505, 718 N.E.2d 539, 546 (1999). If evidence outside the record is required to show the jurisdictional defect, the challenged order is merely voidable,

rather than void. *JoJan Corp.*, 307 Ill. App. 3d at 507, 718 N.E.2d at 548. A voidable judgment is one entered erroneously, either through mistake of fact or law or both, by a court having jurisdiction and is not subject to collateral attack. *In re Marriage of Mitchell*, 181 Ill. 2d 169, 174-75, 692 N.E.2d 281, 284 (1998). Once a court has jurisdiction, an order will not be rendered void nor will the court lose jurisdiction merely because the court makes such a mistake. *Marriage of Mitchell*, 181 Ill. 2d at 174-75, 692 N.E.2d at 284. A voidable judgment may only be challenged directly, and the challenger must proceed under section 2—1401 and comply with all the requirements of that section. *In re Marriage of Stefiniw*, 253 Ill. App. 3d 196, 201, 625 N.E.2d 358, 362 (1993).

### Order Awarding Joint Co-Custodial Care to Luis's Wife and Parents

■ The face of the record supports Wanda's assertion that the court lacked subject matter jurisdiction to enter the June 2001 order granting Luis's wife and parents co-custodial care of Jessica. Subject matter jurisdiction is the power of the court to both adjudicate the general question involved and to grant the particular relief requested. *In re D.D.*, 337 Ill. App. 3d 998, 1012, 788 N.E.2d 10, 20 (2002). Given the nature of the case, an ongoing custody dispute between unmarried parents initiated by Luis's 1995 filing of a verified paternity complaint requesting joint custody of Jessica, the court clearly had subject matter jurisdiction over custody proceedings in general. However, the issue of awarding shared custody to Luis's wife and parents was not properly before the court on June 20, 2001, because no pleading in the case was directed at such relief and Wanda had no notice that the issue would be considered.

With limited exceptions, the circuit court has " 'original jurisdiction of all justiciable matters.' " *Ligon v. Williams*, 264 Ill. App. 3d 701, 707, 637 N.E.2d 633, 638 (1994), quoting Ill. Const. 1970, art. VI, § 9. The court's authority to exercise its jurisdiction and resolve a justiciable question is invoked through the filing of a complaint or petition, pleadings that function to frame the issues for the trial court and circumscribe the relief the court is empowered to order. *Ligon*, 264 Ill. App. 3d at 707, 637 N.E.2d at 638. A party cannot be granted relief in the absence of corresponding pleadings; if a justiciable issue is not presented to the court through proper pleadings, the court cannot *sua sponte* adjudicate an issue. *Ligon*, 264 Ill. App. 3d at 707, 637 N.E.2d at 638. "Orders entered in the absence of a justiciable question properly presented to the court by the parties are void since they result from court action exceeding its jurisdiction." *Ligon*, 264 Ill. App. 3d at 707, 637 N.E.2d at 638.

In this case, the court exceeded its jurisdiction in awarding joint co-custodial care of Jessica to third parties Luis's wife and parents where no pleading requested this relief. An award of custody to third parties in derogation of the custody rights of a natural parent is an unusual form of relief since there is an affirmative presumption that the right of a natural parent to custody of a child is superior to the claim of a third party. *Naylor v. Kindred*, 250 Ill. App. 3d 997, 1009, 620 N.E.2d 520, 528 (1993). The general issue of custody modification was raised by Wanda's April 12, 2001, motion seeking sole custody of Jessica due to the changed circumstance of Luis's impending incarceration and the parents' inability to come to agreement regarding custody. However, the record contains no response to Wanda's motion nor any pleadings before the court on June 20, 2001, requesting the court to award Jessica's custody to Luis's wife and parents as joint co-custodians with Luis. Although it might be inferred that Luis's petition for diverse relief and motion for joinder were initiated as preliminary steps to requesting shared custody of Jessica with his wife and parents, no petition requesting such modification of custody was filed and the court was without jurisdiction to grant this relief.

In order to provide stability and continuity in a child's life, section 610(a) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/610(a) (West 2000)) (the Act) creates a presumption in favor of retaining the custodial parent. *Naylor*, 250 Ill. App. 3d at 1005, 620 N.E.2d at 525. However, this presumption is overcome when the custodial parent is incarcerated because an incarcerated parent cannot continue to fulfill the role of physical custodian of a child. *Naylor*, 250 Ill. App. 3d at 1014, 620 N.E.2d at 531. Like a deceased custodial parent, an incarcerated custodial parent can no longer care for, supervise, provide a home for, or prepare meals for a child or be involved in the child's daily life. *Naylor*, 250 Ill. App. 3d at 1009, 620 N.E.2d at 528.

A newly incarcerated custodial parent may make short-term arrangements for the child's immediate care but cannot dictate that a third party act as temporary custodian of the child for the duration of the incarceration where there is no impediment to the other parent's custody. *Naylor*, 250 Ill. App. 3d at 1010-11, 620 N.E.2d at 528-29. Doing so would defeat the affirmative presumption that the right of a natural parent to custody of a child is superior to the claim of a third person. *Naylor*, 250 Ill. App. 3d at 1011, 620 N.E.2d at 529. Neither parent's right to custody, control and care of their child is superior to that of the other parent. *Naylor*, 250 Ill. App. 3d at 1009, 620 N.E.2d at 528. This means that the equal right of one parent to custody, care and control of the child does not encompass the right to shift custody of a child to a third party. *Naylor*, 250 Ill. App. 3d at 1009, 620 N.E.2d

at 528. To allow Luis to remain Jessica's nominal custodian and dictate that his custody be "shared" with his wife and parents contravenes noncustodial parent Wanda's superior right, as a parent, to custody of Jessica over a third party. *Naylor*, 250 Ill. App. 3d at 1009, 620 N.E.2d at 528.

However, an incarcerated parent will not, upon petition of the noncustodial parent, automatically lose custody of the child. *Naylor*, 250 Ill. App. 3d at 1016, 620 N.E.2d at 532. Any proposed modification of custody must be in the best interests of the child and even parental preferences must yield to this standard. *Naylor*, 250 Ill. App. 3d at 1016, 620 N.E.2d at 532; *Milenkovic* v. *Milenkovic*, 93 Ill. App. 3d 204, 215, 416 N.E.2d 1140, 1147 (1981). There may be situations in which, although the custodial parent has been incarcerated, it would not be in the child's best interest to modify custody. *Naylor*, 250 Ill. App. 3d at 1016, 620 N.E.2d at 532. Apparently, the court found this to be the case here because it allowed Luis to retain custody despite his incarceration and to share it with his wife and parents. This factual determination was, however, made without notice to Wanda.

Custody was not slated to be considered on June 20, 2001. Assuming *arguendo* that the pleadings could be interpreted as raising the issue of Luis being awarded shared custody with his wife and parents, there is no evidence in the record that the issue was set for hearing on June 20, 2001. There is no evidence in the record that the court took any action at all with regard to Wanda's motion for modification of custody before June 20, 2001, and there are no orders setting custody for hearing on that date. Pursuant to the court's June 12, 2001, order, the only matters before the court on June 20, 2001, rescheduled from June 13, 2001, were encompassed by Luis's emergency petition for an order of default against Wanda for failure to respond to pleadings, cessation of Wanda's unsupervised visitation with Jessica, petition for rule to show cause against Wanda and visitation abuse, and a finding of indirect civil contempt against Wanda. Perhaps Luis's emergency petition was intended as a pleading requesting shared custody with his wife and parents, but the petition does not request this relief in any form. Therefore, based on the record, the parties were not before the court on custody issues on June 20, 2001.

Due process of law requires that a party be accorded procedural fairness, *i.e.*, given notice and an opportunity to be heard. *Milenkovic*, 93 Ill. App. 3d at 215, 416 N.E.2d at 1148. Parties who have properly appeared in an action are entitled to notice of any impending motions or hearings. *Berg v. Mid-America Industrial, Inc.*, 293 Ill. App. 3d 731, 734, 688 N.E.2d 699, 702 (1997); *City of Chicago v. American National Bank & Trust Co. of Chicago*, 171 Ill. App. 3d 680, 688, 525 N.E.2d

915, 920 (1988). The court scheduled the June 20, 2001, hearing to address issues raised in Luis's emergency petition and Wanda was duly notified that the petition would be heard on June 20. The record contains no evidence, however, that Wanda was notified that custody, let alone shared custody with third parties, relief which had not been requested by any party, would be considered and/or decided that same day.

It would be "unjust, unfair, and inequitable" to allow the custody order awarding co-custody to Luis's wife and parents to stand where it is clear that Wanda had no notice that such an award was contemplated. *Berg*, 293 Ill. App. 3d at 735, 688 N.E.2d at 702. The custody order materially changed the status of the case. Without notice that custody was at issue on June 20, 2001, Wanda was denied the opportunity to be heard on the issue, to object to Luis's remaining the custodial parent and the award of shared custody, and to present her case for modification of custody in her favor. Accordingly, the custody order "must be deemed null and void as a denial of [Wanda's] constitutional rights to procedural due process" and must be reversed. *City of Chicago*, 171 Ill. App. 3d at 688, 525 N.E.2d at 920. Given that no pleadings requested the relief awarded and Wanda had no notice that custody would be addressed on June 20, 2001, the court exceeded its jurisdiction in awarding shared custody to Luis's wife and parents on June 20, 2001, and the order awarding shared custody is vacated.

### Joinder

■ Similarly, the court erred in allowing joinder of Luis's wife and parents to the action without notice to Wanda that the matter would be decided on June 20, 2001. Although both Luis and his wife and parents had filed motions requesting that the wife and parents be joined to the proceedings, joinder was scheduled for consideration on July 24, 2001, not on June 20, 2001. On May 7, 2001, pursuant to Luis's May 2, 2001, petition for joinder of his wife and parents as additional parties, the court gave Wanda 28 days to respond to the petition and continued the matter until May 30, 2001. At the May 30, 2001, hearing, the court granted Wanda 28 days to respond to the new joinder petition filed on May 22, 2001, by Luis and his wife and parents and continued consideration of the joinder issue to July 24, 2001. There is no evidence in the record that either party requested acceleration of the hearing regarding joinder or that the issue be considered on June 20, 2001, in conjunction with the hearing on Luis's emergency petition for the rule to show cause, cessation of unsupervised visitation, and Wanda's alleged civil contempt and default. We cannot determine from the record what representations

were made to the trial court nor the circumstances under which it entered the order striking the later hearing date and allowing joinder of the third parties. We only know that Wanda had no notice of the apparently *sua sponte* schedule change advancing consideration of this issue by almost one month and was denied her due process right to be heard on the issue. Therefore, the order joining Luis's wife and parents to the action is void for lack of notice and is hereby vacated.

Given our determination that the joinder is void, we need not address Wanda's assertion that joinder is not the appropriate procedure to join third parties to a custody action. Suffice it to say that section 601(c) of the Act provides that the "court, upon showing of good cause, may permit intervention of other interested parties" in child custody proceedings. 750 ILCS 5/601(c) (West 2000). Although joinder may indeed not have been the appropriate procedure for obtaining jurisdiction over Luis's wife and parents, given that they apparently wanted to share custody of Jessica with Luis, had Luis's support and had cared for Jessica for several years, Luis's wife and parents were clearly interested parties and the court could have allowed them to intervene in the case.

### Luis's Wife's and Parents' Standing to Share Custody

Even had Luis's wife and parents petitioned to share custody with Luis, they would have to show that they had standing to do so. Section 601(b)(2) of the Act (750 ILCS 5/601 (West 2000)) provides that a person other than a parent may commence a custody proceeding by filing a petition for custody of a child "but only if he is not in the physical custody of one of his parents." 750 ILCS 5/601(b)(2) (West 2000). This provision creates a standing requirement that nonparents must satisfy in order to commence a custody action. *In re A.W.J.*, 316 Ill. App. 3d 91, 96, 736 N.E.2d 716, 721 (2000). "The purpose of the standing requirement is to preserve the presumed superior rights of natural parents to the custody of their children, although that right is not absolute and does not require a rigid and unthinking construction of section 601(b)(2)." *In re Custody of Cannon*, 268 Ill. App. 3d 937, 941, 645 N.E.2d 348, 351 (1994).

The nonparent must show that the natural parents have relinquished "physical custody" of the child. *In re A.W.J.*, 316 Ill. App. 3d at 96, 736 N.E.2d at 72. Physical custody is not synonymous with physical possession of the child and entails a showing that the natural parents have voluntarily and indefinitely relinquished custody of the child, taking into consideration factors such as who was responsible for the child's care and welfare prior to commencement of the custody proceedings, how physical possession of the child was acquired and the

nature and duration of that possession. *In re A.W.J.*, 316 Ill. App. 3d at 96, 736 N.E.2d at 72. Lack of standing under section 601(b)(2) is an affirmative defense which, if not raised in a motion to dismiss during the time for pleading, is waived. *In re Custody of K.P.L.*, 304 Ill. App. 3d 481, 486, 710 N.E.2d 875, 878 (1999); *In re Marriage of Houghton*, 301 Ill. App. 3d 775, 779, 704 N.E.2d 409, 411 (1998). However, given that "termination of parental rights is an extraordinary measure that may warrant considering issues without resorting to doctrines of judicial convenience, such as forfeiture," a court may *sua sponte* raise the issue of a nonparent's standing or lack thereof. *In re Marriage of Houghton*, 301 Ill. App. 3d at 780, 704 N.E.2d at 412; *In re Marriage of Sechrest*, 202 Ill. App. 3d 865, 875, 560 N.E.2d 1212, 1218 (1990).

 In this case, there is no question that Luis does not have physical custody of Jessica. Although not voluntarily, he relinquished physical custody of her for purposes of section 601(b) by virtue of his incarceration. *In re A.W.J.*, 316 Ill. App. 3d at 98, 736 N.E.2d at 723. Since there is some evidence that Wanda regularly exercised her visitation rights with Jessica and, upon word of Luis's probable jail time, petitioned for temporary, permanent and sole custody of Jessica, her relinquishment of physical custody would be a question for the trial court to determine. See *In re Custody of Peterson*, 112 Ill. 2d 48, 491 N.E.2d 1150 (1986) (grandmother had no standing to petition for custody of grandaughter; no showing that father relinquished physical custody of his daughter where he exercised visitation and immediately challenged grandmother's custody claim after death of child's mother).

### Court's Findings of Default, Violation of Prior Orders, Rule to Show Cause

 On June 20, 2001, the court also found that Wanda failed to appear on June 13, 2001, and on June 20, 2001; failed to return Jessica pursuant to the court's order; and failed to timely respond to Luis's pleadings. Wanda asserts that she did appear on June 13, 2001; did not agree to appear on June 20, 2001; did return Jessica as ordered; and still had time to respond to the pleadings. These are factual determinations which, if made by the court in error, would render the determinations voidable rather than void. Accordingly, the requirements of section 2—1401 would apply to Wanda's motion to vacate these findings. We have already determined that Wanda's section 2—1401 motion was timely filed and the court erred in denying the motion on the basis of timeliness. Therefore, we remand for a determination of whether Wanda properly alleged due diligence in the filing of her motion with regard to these issues, and if she did, an examination on the merits.

For the reasons stated above, we reverse the trial court's denial of Wanda's section 2—1401 motion to vacate, vacate the joinder and custody orders of June 20, 2001, and remand to the trial court.

Reversed and remanded.

HARTMAN and GREIMAN, JJ., concur.