No. 2-08-1236    Filed: 7-21-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| ROCKFORD FINANCIAL SYSTEMS, INC., | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County. |
| Plaintiff and Third-Party Citation | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | No. 07--AR--291 |
| | ) | |
| MICHAEL BORGETTI, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | Honorable |
| (National City Bank, Third-Party Citation | ) | Eugene G. Doherty, |
| Respondent-Appellee). | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, Rockford Financial Systems, Inc., appeals from the orders of the trial court vacating a judgment against third-party citation respondent, National City Bank, and limiting the amount of the subsequently reinstated judgment. We affirm.

In May 2007, Rockford Financial filed a one-count complaint for breach of promissory note against defendant, Michael Borgetti. On July 19, 2007, pursuant to an agreed order, judgment was entered in favor of Rockford Financial in the amount of $44,210.62 plus costs. Rockford Financial then began supplementary proceedings, pursuant to section 2--1402 of the Civil Practice Law (735 ILCS 5/2--1402 (West 2006)). During a hearing on a subsequent citation to discover assets, the following colloquy took place:

"Q. Do you have any bank accounts?

A. [Borgetti] Yes, sir.

Q. And where are they located?

A. National City.

Q. What kind of accounts do you have?

A. Just checking.

Q. Is that in your name solely?

A. Yes, sir.

Q. No other bank accounts?

A. No, sir."

Rockford Financial then filed a third-party citation to discover assets against National City, which failed to appear or otherwise respond on the return date of November 5, 2007. National City further failed to respond to mail and facsimile requests by Rockford Financial, which then filed a motion for conditional judgment against National City in the amount of $44,210.62 plus interest and costs. The trial court granted the motion on December 21, 2007, and confirmed the judgment on March 17, 2008.

On June 13, 2008, the trial court issued a citation to discover assets against National City for recovery of the confirmed judgment. National City then filed a motion to quash the citation to discover assets and vacate the judgment. National City attached an affidavit of Philip Roby, its special services processor, in which he stated that he received the third-party citation to discover assets on November 15, 2007. He immediately froze Borgetti's only account, which had a negative balance of $34.83 and had been negative since October 24, 2007 (the date on which the citation was

served). He spoke to Rockford Financial's attorney on December 5, 2007, and told him that Borgetti's only account at National City had a negative balance.

National City filed a corrected affidavit on July 30, 2008, in which Roby stated that, upon further review, at the time it was frozen Borgetti's account had a negative balance of $8.83 and that, on October 24, 2007, the account had a positive balance of $519.98. With the exception of a positive balance of $0.17 on the March 14, 2008, bank statement, the account had not had a positive balance after November 15, 2007.

On September 2, 2008, the trial court granted National City's motion to quash the citation and vacate the judgment. Rockford Financial filed a motion to reconsider. On November 24, 2008, the trial court reinstated the conditional judgment against National City but limited the judgment to $519.98 plus costs. This appeal followed.

Rockford Financial first contends that the trial court erred in granting National City's motion to quash the citation and vacate the judgment. National City brought its motion under section 2--1401 of the Civil Practice Law, which provides for relief from final orders and judgments after 30 days but before 2 years from entry. See 735 ILCS 5/2--1401 (West 2006). Generally, such a petition is directed to the sound discretion of the trial court, and the court's decision will not be disturbed on review unless the court has abused its discretion. Engel v. Loyfman, 383 Ill. App. 3d 191, 194 (2008). This can be so even where an issue addressed by the trial court is a question of law. See Engel, 383 Ill. App. 3d at 194. The granting of the petition must be supported by a preponderance of the evidence. Smith v. Airoom, Inc., 114 Ill. 2d 209, 223 (1986). In general, to be entitled to relief under section 2--1401, a petitioner must affirmatively set forth specific factual allegations supporting (1) the existence of a meritorious defense or claim; (2) due diligence in presenting that

defense or claim to the trial court in the original action; and (3) due diligence in filing the section 2--1401 petition for relief. Smith, 114 Ill. 2d at 220-21. However, a petition brought pursuant to section 2--1401(f) to vacate a void order is not amenable to the due diligence, meritorious defense, and two-year time requirements. Cook v. Burnette, 341 Ill. App. 3d 652, 660 (2003).

We are aware that our supreme court has recently held that "when a trial court enters either a judgment on the pleadings or a dismissal in a section 2--1401 proceeding, that order will be reviewed, on appeal, de novo." People v. Vincent, 226 Ill. 2d 1, 18 (2007). The court explained that the abuse-of-discretion standard, which had been emphatically affirmed as the appropriate standard of review just months before in Paul v. Gerald Adelman & Associates, Ltd., 223 Ill. 2d 85 (2006), "does not comport with the usual rules of civil practice and procedure" if applied in cases where either a judgment on the pleadings or a dismissal has been entered. Vincent, 226 Ill. 2d at 16. While the issues of a meritorious defense and the timeliness of a section 2--1401 petition are clearly amenable to a de novo review, we do not understand how the issue of due diligence, both in presenting the defense originally and in filing the section 2--1401 petition, can be given a de novo review. Due diligence in all its aspects is a mixed question of law and fact. See Dillman v. Nadelhoffer, 160 Ill. 121, 128 (1895). A trial court's determination of whether a party has acted diligently is an objective one and is a " 'fact-intensive inquiry that is suited to balancing, not to bright lines.' [Citation.]" Verploegh v. Gagliano, 396 Ill. App. 3d 1041, 1045 (2009) (analyzing the requirement of Supreme Court Rule 103(b) (177 Ill. 2d R. 103(b)) that a plaintiff exercise reasonable diligence to obtain service on a defendant). In analyzing Rule 103(b)'s diligence requirement, our supreme court has stated:

"There is no specific time limitation provided by Rule 103(b). Rather, a court must consider the passage of time in relation to all the other facts and circumstances of each case individually." Case v. Galesburg Cottage Hospital, 227 Ill. 2d 207, 213 (2007).

The court then detailed a nonexhaustive list of six factors that a court should consider. See Case, 227 Ill. 2d at 212-13. Requiring a de novo review of a fact-intensive inquiry suited not to bright lines but to balancing leads to nothing more than an imposition of this court's judgment over that of the trial court.

The Vincent court also noted that the equitable powers of the court and issues of justice and fairness were proper considerations when postjudgment relief was available under common-law writs such as writs of error coram nobis and coram vobis, bills of review, and bills in the nature of bills of review. See Vincent, 226 Ill. 2d at 15-16. The enactment of section 72 of the Civil Practice Act (the predecessor to section 2--1401) clearly abolished the common-law writs. See 735 ILCS 5/2--1401 (West 2008). Therefore, it became "inaccurate to continue to view the relief in strictly equitable terms." Vincent, 226 Ill. 2d at 16. However, the General Assembly used "the broadest possible terms" to define the relief available under section 2--1401. People v. Lawton, 212 Ill. 2d 285, 297 (2004). Thus,

"[a]ll relief heretofore obtainable and the grounds for such relief heretofore available, whether by any of the foregoing remedies or otherwise, shall be available in every case, by proceedings hereunder, regardless of the nature of the order or judgment from which relief is sought or of the proceedings in which it was entered." (Emphases added.) 735 ILCS 5/2--1401(a) (West 2008).

Therefore, the abolishment of the common-law writs did not abolish the relief that had been obtainable under them or the grounds for seeking the relief.

We do not see the legislature's action of abolishing the common-law writs and providing a statutory method for attacking a judgment as a repudiation of the writs and the equitable powers associated with them. Rather, we see it as a consolidation of a potentially confusing melange of many independent writs into one statutory method. In his dissent in People v. Bean, 389 Ill. App. 3d 579 (2009), Justice Stewart analyzed an analogous situation existing prior to the adoption of the Post-Conviction Petition Hearing Act (Act) (725 ILCS 5/122--1 et seq. (West 2008)), when a petitioner could attack his conviction by a writ of error, habeas corpus, or coram nobis. Bean, 389 Ill. App. 3d at 588 (Stewart, J., dissenting). Addressing concerns about Illinois's pre-Act postconviction procedures, Justice Stewart quoted from a concurring opinion in a case from the United States Supreme Court:

" 'The trouble with Illinois is not that it offers no procedure. It is that it offers too many, and makes them so intricate and ineffective that in practical effect they amount to none. The possibility of securing effective determination on the merits is substantially foreclosed by the probability, indeed the all but mathematical certainty, that the case will go off on the procedural ruling that the wrong one of several possible remedies has been followed.

* * *

*** If the federal guarantee of due process in a criminal trial is to have real significance in Illinois, it is imperative that men convicted in violation of their constitutional rights have an adequate opportunity to be heard in court. This opportunity is not adequate

so long as they are required to ride the Illinois merry-go-round of <u>habeas</u> <u>corpus</u>, <u>coram</u> <u>nobis</u>, and writ of error before getting a hearing in a federal court.' " <u>Bean</u>, 389 Ill. App. 3d at 588 (Stewart, J., dissenting), quoting <u>Marino v. Ragen</u>, 332 U.S. 561, 565-70, 92 L. Ed. 170, 174-76, 68 S. Ct. 240, 243-45 (1947) (Rutledge, J., concurring, joined by Douglas and Murphy, JJ.).

Furthermore, the court's decision in <u>Vincent</u> is factually distinguishable from the case before us and is more limited than this court recently stated in <u>Mills v. McDuffa</u>, 393 Ill. App. 3d 940 (2009). <u>Vincent</u> involved the very specific issue of "whether a trial court may dispose of a properly served section 2--1401 petition without benefit of responsive pleadings and without giving the petitioner notice of the impending ruling and the opportunity to address the court prior to the ruling." <u>Vincent</u>, 226 Ill. 2d at 5. The defendant filed his petition pursuant to section 2--1401(f), alleging that the judgment against him was void. <u>Vincent</u>, 226 Ill. 2d at 5. He alleged that the trial court had violated various sections of the Unified Code of Corrections (730 ILCS 5/5--8--4(a), (c)(2) (West 1998)) in imposing sentence and that the sentence was void. <u>Vincent</u>, 226 Ill. 2d at 5. There is no indication that the defendant attached any affidavits, depositions, etc. to his petition. The State filed no responsive pleading.

The supreme court concluded that there was no such thing as a "summary dismissal" in a section 2--1401 proceeding. See <u>Vincent</u>, 226 Ill. 2d at 6. Rather, the trial court had "entered judgment <u>sua</u> <u>sponte</u> by denying relief on the petition." <u>Vincent</u>, 226 Ill. 2d at 11. By not responding to the petition, the State caused the trial court to accept the defendant's allegations as true; the trial court then determined that the allegations did not provide a legal basis for relief under section 2-- 1401. <u>Vincent</u>, 226 Ill. 2d at 11-12. The supreme court stated that the trial court's actions could be

characterized in two ways: (1) the trial court granted the State judgment on the pleadings; or (2) the trial court ruled against the defendant by dismissing the petition with prejudice. Vincent, 226 Ill. 2d at 12. The court then concluded that "the abuse of discretion standard is improper in section 2--1401 proceedings in which either judgment on the pleadings or dismissal for failure to state a cause of action has been entered." Vincent, 226 Ill. 2d at 15. However, as the supreme court recognized, Vincent "is limited only to the standard of review applicable to" judgment on the pleadings and dismissal under section 2--1401. Vincent, 226 Ill. 2d at 16.

Vincent is distinguishable because the defendant therein alleged that the trial court had violated various sections of the Unified Code of Corrections in imposing sentence and that the sentence was void. Vincent, 226 Ill. 2d at 5. As noted, a section 2--1401(f) petition to vacate a void order is not amenable to the due diligence, meritorious defense, and two-year time requirements. Cook, 341 Ill. App. 3d at 660. An allegation of voidness, based on a question of law regarding jurisdiction, has nothing to do with equitable principles. The Vincent court was correct to relate that, when a section 2--1401 petition requests relief based upon a void judgment, equitable principles are not involved. We believe it incorrect to interpret a case involving allegations of a void judgment as having any precedential value in cases where voidness of an order or judgment for lack of jurisdiction is not at issue.

Applied to the sole jurisdictional issue raised in Vincent, the aforesaid dicta is correct. A proper determination of jurisdiction, based only on the pleadings or even after a hearing on the merits, will not implicate equitable. Equitable principles cannot confer subject matter jurisdiction; "a circuit court's subject matter jurisdiction is conferred entirely by our state constitution." Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.,199 Ill. 2d 325, 334 (2002). Because lack of jurisdiction and

voidness are not at issue in this case, it is immaterial whether the court dismissed the petition for failure to state a cause of action or entered judgment on the pleadings in conformity with the dicta of Vincent.

The typical section 2--1401 analysis is two-tiered: both a meritorious defense and due diligence must be pleaded and demonstrated. The issue of a meritorious defense is a question of law, and it is properly subject to summary judgment and de novo review. If the petitioner fails to allege the existence of a meritorious defense, the petition is properly denied, and due diligence need not be addressed. However, if a meritorious defense probably exists, the court must address the issue of due diligence. Vincent did not address either the issue of due diligence or its standard of review.

It is here that Mills attempts to extend the reach of Vincent. Vincent was as distinguishable from Mills as it is from the case before us. Mills mechanically applied the holding in Vincent even though Mills did not involve a petition's dismissal, sua sponte or otherwise, due to lack of subject matter jurisdiction. The trial court in Mills considered an affidavit, medical records, and a letter from a doctor in addition to the pleadings and supporting briefs (Mills, 393 Ill. App. 3d at 948), and it considered the issue of due diligence. We are not persuaded by the analysis and the record in Mills that Vincent applies to either Mills or the case before us.

Vincent expressed "no opinion" on which standard of review to apply to any other disposition under section 2--1401 and left "further discussion on the subject to another day." Vincent, 226 Ill. 2d at 17 n.5.[1] We do not contend that Vincent and Mills were wrongly decided; however, neither case

_____

[1]Confusingly, the court in Vincent added in self-admitted dicta that "the abuse of discretions [sic] standard does not match up with any other of the types of dispositions possible in section 2--1401 proceedings." Vincent, 226 Ill. 2d at 17 n.5. The court then cited to Chicago Investment Corp.

alters our opinion that, when the legislature passed section 72 of the Civil Practice Act, it never intended to do away with the court's equitable powers to deal with postjudgment petitions. Further, we do not believe that Paul was affected by the holding in Vincent. We agree with Paul that equitable principles and the exercise of discretion still apply in section 2--1401 proceedings not involving judgments alleged to be void for lack of subject matter jurisdiction. Thus, this court must review those exercises of discretion under the more deferential abuse-of-discretion standard.

Rockford Financial's citation to discover Borgetti's assets held by National City was brought pursuant to supplementary proceedings under section 2--1402, which provides in part:

"(a) A judgment creditor *** is entitled to prosecute supplementary proceedings for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor not exempt from the enforcement of the judgment, a deduction order or garnishment, and of compelling the application of non-exempt assets or income discovered toward payment of the amount due under the judgment ***.

_____

v. Dolins, 107 Ill. 2d 120, 124 (1985), for the proposition that the grant or denial of relief after a civil bench trial is traditionally reviewed under a manifest-weight-of-the-evidence standard. Vincent, 226 Ill. 2d at 17 n.5. Our confusion is twofold. First, Chicago Investment Corp. did not involve a section 2--1401 petition or any other postjudgment proceeding; it involved the appeal of a trial court's judgment after a bench trial. Second, motions brought within 30 days after judgment in nonjury cases, pursuant to section 2--1203 of the Code of Civil Procedure (735 ILCS 5/2--1203 (West 2008)), are reviewed for an abuse of discretion. See Cable America, Inc. v. Pace Electronics, Inc., 396 Ill. App. 3d 15, 24-25 (2009); see also Hawes v. Luhr Brothers, Inc., 212 Ill. 2d 93, 106 (2004). Certainly, the abuse-of-discretion standard of review is no stranger to postjudgment proceedings.

* * *

(c) When assets or income of the judgment debtor not exempt from the satisfaction

of a judgment, a deduction order or garnishment are discovered, the court may, by appropriate

order or judgment:

* * *

(3) Compel any person cited, other than the judgment debtor, to deliver up

any assets so discovered, to be applied in satisfaction of the judgment ***." 735 ILCS 5/2--

1402(a), (c)(3) (West 2006).

"Before a judgment creditor may proceed against a third party who is not the judgment debtor,

the record must contain some evidence that the third party possesses assets of the judgment debtor."

Schak v. Blom, 334 Ill. App. 3d 129, 133 (2002). "The provisions of section 2--1402 are to be

liberally construed, and the burden lies with the petitioner to show that the citation respondent

possesses assets belonging to the judgment creditor." Schak, 334 Ill. App. 3d at 133.

Here, the trial court's citation to discover assets against National City was based on Borgetti's

statement that he had checking accounts at National City. The court subsequently entered a

conditional judgment against National City and confirmed the judgment, all without any evidence that

any checking account allegedly held by National City contained any assets, i.e., had a positive

balance. Roby's amended affidavit, in which he stated that Borgetti's account contained a positive

balance of $519.98, was filed seven months after the court entered the conditional judgment and more

than four months after the court confirmed the judgment. Thus, contrary to Rockford Financial's

argument, the affidavit could not provide a basis for the court's judgment against National City.

We find no abuse of discretion in the trial court's granting of National City's section 2--1401 petition. Looking to the requirements for relief under section 2--1401, we note that National City clearly had a meritorious defense or claim (its initial assessment that it held no assets of Borgetti) and clearly exercised due diligence in filing its petition (approximately three months after the trial court entered the order confirming the judgment against National City). The only question remaining is whether National City exercised due diligence in presenting that defense or claim to the trial court in the original action. See Smith, 114 Ill. 2d at 220-21. Considering due diligence in all its aspects, we determine that the trial court's ruling was neither manifestly erroneous nor an abuse of discretion. According to Roby, National City determined that it had no assets belonging to Borgetti when it was served with the citation to discover assets. While the better practice would have been to respond that it had no relevant assets, there is no evidence that National City was withholding assets. This conclusion is bolstered by the fact that National City filed an amended affidavit by Roby only two weeks later, when it determined that a small balance actually existed when the citation was served.

We further note that equitable powers may require that a judgment be set aside even in the absence of due diligence by a party seeking section 2--1401 relief. See Salazar v. Wiley Sanders Trucking Co., 216 Ill. App. 3d 863, 891 (1991). One of the guiding principles in the administration of section 2--1401 relief is that the petition invokes the equitable powers of the court, which should prevent the enforcement of a judgment when it would be unfair, unjust, or unconscionable. Smith, 114 Ill. 2d at 225. Here, there is no basis in law or equity to allow such a large judgment to stand against a third party that held such a limited amount of recoverable assets. Rockford Financial's judgment was against Borgetti; it is his assets, not those of National City, that should satisfy the judgment. We will not entertain such an unjustified windfall to the benefit of both Rockford

Financial and Borgetti at the expense of a third party that held such an insignificant amount of Borgetti's assets.

Rockford Financial next contends that the trial court erred in reinstating the conditional judgment for $519.98 plus costs instead of the initially ordered $44,210.62 plus costs. We disagree.

Rockford Financial's argument fails because it is based on the misapprehension that the November 24, 2008, judgment against National City was merely a reinstatement of the initial confirmed, conditional judgment. That initial judgment was entered with no evidence of record that National City held any assets belonging to Borgetti and was, thus, improper. However, in his amended affidavit, Roby stated that, on the date that the citation was served, Borgetti's account contained $519.98. This was then evidence that National City possessed assets of the judgment debtor. Thus, the trial court then had a basis in the record to compel National City to "deliver up any assets so discovered, to be applied in satisfaction of the judgment." 735 ILCS 5/2--1402(c)(3) (West 2006). The statute clearly limits the trial court to compelling the turnover of "any assets so discovered" and does not grant authority to compel the turnover of more than the party holds. Therefore, we find no error here.

For these reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

HUTCHINSON, J., concurs.

JUSTICE JORGENSEN, specially concurring:

Although I agree with the majority's result, I disagree with its use of the abuse-of-discretion standard. I believe that the majority's approach in this regard violates procedure set forth by the Illinois Supreme Court in People v. Vincent, 226 Ill. 2d 1 (2007), as well as this court's recent opinion

in Mills v. McDuffa, 393 Ill. App. 3d 940 (2009). It is well settled that an appellate court must follow the law as set forth by the supreme court. Nelson v. Aurora Equipment Co., 391 Ill. App. 3d 1036, 1038 (2009).

Vincent explicitly states that it is incorrect for courts to continue to view a section 2--1401 petition as a matter of judicial discretion, subject to an abuse-of-discretion review on appeal. Vincent, 226 Ill. 2d at 15. The Vincent court stated:

"[T]he operation of the abuse of discretion standard is the result of the erroneous belief that a section 2--1401 petition 'invokes the equitable powers of the court' ***. When the legislature abolished the [common-law] writs in favor of today's statutory remedy, it became inaccurate to continue to view the relief in strictly equitable terms. *** Because relief is no longer purely discretionary, it makes little sense to continue to apply an abuse of discretion standard on review." Vincent, 226 Ill. 2d at 15-16.

The Vincent court essentially held that the standard by which we should review the trial court's disposition of a section 2--1401 petition depends upon the manner in which it was disposed. See Vincent, 226 Ill. 2d at 15-17. Five types of final dispositions are possible in section 2--1401 litigation: "the trial judge may dismiss the petition; the trial judge may grant or deny the petition on the pleadings alone (summary judgment); or the trial judge may grant or deny relief after holding a hearing at which factual disputes are resolved." Vincent, 226 Ill. 2d at 9, relying on D. Simko, Updating the Standard of Review for Petitions to Vacate Final Judgments, 86 Ill. B.J. 34 (1998) (listing the five possible dispositions as dismissing, granting relief without an evidentiary hearing, denying relief without an evidentiary hearing, granting relief after an evidentiary hearing, and denying relief after an evidentiary hearing). Vincent mandates that, where a trial court enters a judgment on

the pleadings or a summary judgment in a section 2--1401 proceeding, that judgment will be reviewed de novo on appeal. Vincent, 226 Ill. 2d at 18. Although Vincent dealt with the dismissal of a section 2--1401 petition (possibility number one), the court stated that future analyses regarding the standard of review for a grant or denial of a section 2--1401 petition should "be *** grounded in the notion that each of the dispositions available in a section 2--1401 action is borrowed from our civil practice and pleadings rules." Vincent, 226 Ill. 2d at 17.

In this case, the trial court granted National City's section 2--1401 petition based on the pleadings and an affidavit; there was no evidentiary hearing. Therefore, just as we would review de novo the trial court's grant of a motion for summary judgment, we should review de novo the trial court's grant of National City's section 2--1401 petition.

I disagree with the majority's reasoning that de novo review is not appropriate in this case because the trial court made a determination regarding National City's due diligence, an inquiry suited to balancing and not bright lines. Nearly every section 2--1401 petition contains a due diligence component, and the issue of due diligence may, where the facts are undisputed and where reasonable minds would not differ as to the inferences to be drawn from those facts, be decided as a matter of law (i.e., summary judgment may be appropriate). On the other hand, "[w]here a material issue of fact exists, summary judgment is inappropriate and an evidentiary hearing--a trial in effect--is required on the [section 2--1401] petition." Vincent, 226 Ill. 2d at 9. Hence, the decision to which we would apply de novo review in this case is the trial court's effective grant of summary judgment to National City; we would not perform a direct, "naked" review of the due diligence issue. We would not have to decide "yes" or "no" as to the issue of due diligence as if we were the trial court; instead, we would review the issue of due diligence through the analytic framework established for

reviewing a grant of summary judgment on the matter. In reviewing <u>de</u> <u>novo</u> the grant of summary judgment, we might say "yes," as a matter of law there was due diligence; "no," as a matter of law there was not due diligence; <u>or</u>, we might say, based on the information before the court, this matter cannot be decided as a matter of law and we remand for an evidentiary hearing. It is the trial court's decision following the evidentiary hearing to which we would afford a greater degree of deference.