2023 IL App (1st) 220716-U

SECOND DIVISION
September 19, 2023

No. 1-22-0716

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| NATIONAL EXPERIENTIAL, LLC, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| | ) | Cook County |
| v. | ) | |
| | ) | 2021 CH 1869 |
| | ) | |
| 601 W COMPANIES, LLC, and BRICKELL 13 | ) | Honorable |
| CHICAGO, LLC, | ) | Caroline Kate Moreland |
| | ) | Judge Presiding |
| Defendants-Appellees. | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Howse and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirmed and remanded. Trial court did not err in granting defendants' Section 2-1401 petition and vacating default judgment.

¶ 2    This is a case of missed connections. National Experiential, LLC, plaintiff here, was hired to perform a light show for the National Basketball Association's All-Star weekend in February 2022. The plan was to project images from machines in Millennium Park onto the side of the Aon Center in downtown Chicago, which defendants, 601 W Companies, LLC, and Brickell 13 Chicago, LLC, owned. Plaintiff paid defendants $175,000 for the right to use the building as a makeshift screen. But late in the game, the city of Chicago shut down the

production because plaintiff did not get the appropriate permits to use Millennium Park.

¶ 3      The show no longer going forward, plaintiff sought a refund from defendants. When they refused, plaintiff sued. Plaintiff served the summons and complaint on Diversified Corporate Services (Diversified), defendants' registered agent in Springfield, Illinois. Diversified was supposed to pass any legal service along to defendants' representatives.

¶ 4      But thanks to a corrupted file, none of the documents that plaintiff sent to Diversified ever made it to defendants. When defendants did not answer or otherwise appear, plaintiff obtained a default judgment in the circuit court of Cook County. Plaintiff then filed a citation to discover assets to collect its judgment. This citation finally caught the attention of defendants' counsel, who petitioned the circuit court to vacate the default judgment, based on the breakdown in defendants' normal service procedures. After briefing, the trial court granted defendants' petition and vacated the default judgment.

¶ 5      Plaintiff appeals, claiming that defendants failed to exercise due diligence in the original action and had no meritorious defenses to the action. We find no error in the trial court's judgment and affirm.

¶ 6                                  BACKGROUND

¶ 7      Defendants jointly own the Aon Center in Chicago and had an established and customary procedure to receive service of process for any legal documents related to the building. They contracted with Diversified Corporate Services International, Inc. (Diversified) to be its third-party registered agent. Diversified has an agent in Springfield, Illinois, who accepts service of legal documents.

¶ 8      Typically, upon receiving any such documents, one of Diversified's agents would transmit them via email to Diversified's president, Jerry Joseph. Joseph then would transmit the

documents via email to Justin Katz, one of defendants' employees. Katz would move them to Jones Lang LaSalle Americas (Jones Lang), the property manager of the Aon Center. Jones Lang would send the documents to defendants' legal counsel. That process broke down in this case, however, and is central to the controversy.

¶ 9    In February 2020, the National Basketball Association held its annual All-Star Game in Chicago. Nike, the shoe company, hired plaintiff, a firm that specializes in advertising and marketing light shows, to display digital light shows onto the sides of the Prudential Building and Aon Center in downtown Chicago as part of the weekend's festivities. Plaintiff planned to use space in Millennium Park from which it would project the light displays on the sides of the buildings.

¶ 10    MB Real Estate Services (MB), which manages the park for the city of Chicago (City), informed plaintiff that the city would not require a permit to use the park. On February 7, 2020, plaintiff and the City executed a contract titled the Millenium Park License Agreement. The contract defined the "permitted use" of the park as "Nike Light Promo for NBA All-Star Game." By then, plaintiff had secured approval from the owners of both the Aon and Prudential buildings to project the show. Plaintiff would pay the City $116,044.50 for use of the park, and a total of $325,000 to the owners of the buildings, with $175,000 going to defendants.

¶ 11    But on the eve of the show, and after all the required contracts were signed and things appeared to be in order, the City informed plaintiff that it *did* require permits to use the park, and without them, the City would shut down the production. Eventually, the City cancelled the Millenium Park License Agreement. Plaintiff asked the owners of the Prudential and Aon buildings to return the payment they received for the show; the Prudential Building owners agreed to and refunded plaintiff, but defendants did not. Defendants' attorneys argued they did

not need to refund the $175,000 because they had fully performed their obligation under the contract with plaintiff and that it was not their fault plaintiff did not get the necessary permits to perform the show.

¶ 12    On April 21, 2021, plaintiff filed the underlying lawsuit in the circuit court of Cook County, seeking recission and a claim for unjust enrichment. Plaintiff served defendants' registered agent, Diversified, in Springfield. Two months later, in June 2021, after defendants failed to file an appearance, plaintiff moved for default judgment. The circuit court granted the default judgment and eventually awarded plaintiff a judgment of $187,395.84. Throughout the case, plaintiff sent summonses as well as copies of the complaint and subsequent motions to Diversified in Springfield.

¶ 13    Joseph, Diversified's president and the one responsible for forwarding any service to defendants, later swore in an affidavit that, though Diversified received the summonses and filings, he inadvertently transferred the emails related to the case into a corrupted folder he was unable to later access. Thus, Diversified "failed to forward the above-references Summonses, Complaint, the Motion to Default and notice relating thereto, and the Motion for the Award of a Sum Certain and notice relating thereto" to defendants.

¶ 14    With the default judgment in hand, plaintiff filed a citation to discover assets to collect its judgment. This time, plaintiff served both Diversified and Jones Lang, the Aon Center's building management company. Matthew Amato, who works for Jones Lang, received the citations on November 23, 2021, and immediately forwarded them to defendants and their counsel. Counsel contacted Diversified and discovered the previous filings had been inadvertently moved into the corrupted folder and could not be retrieved.

¶ 15    In December, defendants filed a section 2-1401 petition to vacate the default judgment.

Defendants argued that they had a meritorious defense to the original action, and that their initial inaction was due to an "excusable mistake"—a breakdown in their usual process to receive service. Plaintiff contested the petition, arguing that defendants did not pursue the original action with due diligence and lacked a meritorious defense, in any event.

¶ 16    The trial court granted the petition, vacated the default judgment, and gave defendants time to answer the complaint or otherwise plead. The court concluded that defendants had a meritorious defense to the original recission claim, and that the breakdown in the usual procedures to receive process was an excusable mistake. Plaintiff filed a timely notice of appeal.

¶ 17                                  ANALYSIS

¶ 18    On appeal, plaintiff contends the trial court erred in vacating the judgment because defendants did not have a meritorious defense to plaintiff's claim and failed to use due diligence to ensure they appeared and responded to the complaint in the original action.

¶ 19    Section 2-1401 of the Code of Civil Procedure lays out a comprehensive method to vacate a final judgment older than 30 days. 735 ILCS 5/2-1401(a) (West 2020). *West Bend Mutual Insurance Co. v. 3RC Mechanical & Contracting Services, LLC*, 2014 IL App (1st) 123213, ¶ 11. "One of the guiding principles in the administration of section 2–1401 relief is that 'the petition invokes the equitable powers of the circuit court, which should prevent enforcement of a default judgment when it would be unfair, unjust, or unconscionable.' " *Halle v. Robertson*, 219 Ill. App. 3d 564, 569 (1991) (quoting *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 225 (1986)).

¶ 20    To obtain relief under section 2-1401, a petitioner must set forth specific factual allegations supporting three elements: (1) the existence of a meritorious defense or claim in the original action; (2) due diligence in presenting that claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief. *Airoom*, 114 Ill. 2d at

220-21. The parties agree that the section 2-1401 petition was timely filed within the statutory two-year time limit and that defendants pursued it with due diligence, the third element. They disagree on the other two elements.

¶ 21                                     I. Meritorious Defense

¶ 22    We start with whether defendants have a meritorious defense to the original complaint. When, as here, that defense is a factual one, not a purely legal one, we are obviously in no position to conclusively resolve the factual dispute; rather, we determine whether the facts put forth by defendant, if true, would defeat plaintiff's claim. *Halle*, 219 Ill. App. 3d at 568-69.

¶ 23    There is an issue regarding the standard of review. In its most recent discussion of reviews of section 2-1401 petitions involving consideration of the three-factor test, our supreme court has indicated that our standard of review is abuse of discretion. See *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 50 ("a section 2-1401 petition that raises a fact-dependent challenge to a final judgment or order must be resolved by considering the particular facts, circumstances, and equities of the underlying case."). We recently adhered to that standard of review in this context. See *In re County Treasurer & ex officio County Collector of Cook County*, 2023 IL App (1st) 220070, ¶ 44.

¶ 24    Other decisions, drilling down more narrowly to the specific element of meritorious defense, have reasoned that the meritorious-defense element should be reviewed *de novo*. See *West Bend*, 2014 IL App (1st) 123213, ¶ 11; *Cavalry Portfolio Services v. Rocha*, 2012 IL App (1st) 111690, ¶ 10; *Rockford Financial Systems, Inc. v. Borgetti*, 403 Ill. App. 3d 321, 327 (2010). These cases predate the supreme court's *Walters* decision, though we note that those decisions make a good deal of sense. The question of a meritorious defense is a question of law, even when, as here, the controversy is an inherently factual one like due diligence, because we

are not deciding the factual question but merely determining whether the facts, if resolved in favor of defendants, would constitute a meritorious defense. See *Borgetti*, 403 Ill. App. 3d at 327. Our role here is not materially different than when we consider whether allegations in a complaint, taken as true, state a claim for relief, or whether questions of material fact preclude the entry of summary judgment—decisions subject to *de novo* review. We are not deciding the facts but merely determining whether a real factual controversy could exist.

¶ 25    Because the supreme court's decision obviously controls, even though it was less specific, we will review the circuit court's judgment on this element for an abuse of discretion, as each of the parties here suggest we should. An abuse of discretion occurs when no reasonable person would adopt the view of the circuit court. *Seymour v. Collins*, 2015 IL 118432, ¶ 41. But we emphasize that our decision would be the same even if our review were *de novo*.

¶ 26    First, some housekeeping. Count I of plaintiff's suit alleged recission of the contract based on unilateral mistake. In resisting the section 2-1401 petition below, plaintiff argued only that it had a viable rescission claim based on unilateral mistake. On appeal, however, plaintiff now adds that its rescission claim could be supported by the doctrine of impossibility of performance, too. We will not consider that argument, raised for the first time on appeal. See *Hartman v. Townsend*, 169 Ill. App. 3d 111, 120 (1988) (party may not present argument on appeal that were not first raised in trial court); Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (points not argued are forfeited).

¶ 27    Likewise, though plaintiff brought a count in its complaint below for unjust enrichment, by its own admission, plaintiff did not argue the lack of a meritorious defense against that claim in litigating the section 2-1401 petition. So we will not entertain any argument for the first time on appeal challenging the lack of a meritorious defense as to that claim; we will limit our

consideration to whether defendants had a meritorious defense against the rescission count.

¶ 28    Recission is the cancelling of a contract to restore the parties to their pre-contract status. *United City of Yorkville v. Village of Sugar Grove*, 376 Ill. App. 3d 9, 22 (2007). To rescind a contract based on unilateral mistake, a party must show that (1) the mistake is material to the contract; (2) the mistake did not result from a lack of due care on the part of the party seeking rescission; (3) the mistake is of such grave consequence that enforcement of the contract would be unconscionable; and (4) the other party can be placed in its precontract position. *Vanderberg. v. Brunswick Corporation*, 2017 IL App (1st) 170181, ¶ 36.

¶ 29    The parties here focus on the second element, whether the mistake resulted from a lack of due care by plaintiff. Defendants, of course, claim that plaintiffs did not exercise due diligence in ensuring that it had all necessary permits to perform the show. Plaintiff claims that it was not foreseeable, based on its conversations with Millenium Park, that the city would swoop in at the last moment and unexpectedly require permits, given all the assurances plaintiff had received.

¶ 30    It should not be surprising that we find a *bona fide* factual dispute on this question. To be sure, plaintiff has made several allegations in its complaint that it was led astray by representatives of Millenium Park, who told plaintiff that no permit was required to perform its light show. Plaintiff points to a communication from Millenium Park's private event manager in December 2019 that he had "checked with the city and they feel as long as you have permission from the buildings, there shouldn't be a Special Event Permit Application needed but we will need to loop in the Mayor's Office, 1st District and 42nd Ward for awareness." In January 2020, the event manager told plaintiff that he would provide a letter with the details of the project to the City of Chicago "so no surprises pop up." Plaintiff alleges that Millenium Park continued to indicate, by word and deed, its approval, including executing the contract with plaintiff for the

light show.

¶ 31    These allegations support plaintiff's claim that it exercised due care. But defendants note, for example, that the reference to "loop[ing] in the Mayor's office" and the relevant ward offices suggested that these offices still needed to sign off on the deal, and "[t]here is no indication that National took the necessary steps to obtain that confirmation."

¶ 32    Indeed, it is fair to say from a review of the complaint that plaintiff does not even know the full story of why its project was shut down by the city. The complaint alleges that powerful individuals within the city, including representatives of the Chicago Bulls basketball team, wanted the Prudential Building (the other building plaintiff was planning to project images on) for their own purposes, namely to project that team's red color on the Prudential Building during the All-Star weekend—and had to cancel plaintiff's contract to make that happen.

¶ 33    The question of due care is typically a factual one, considering all the attendant circumstances, not ordinarily amenable to summary disposition. See, *e.g.*, *Siegel v. Levy Organization Development Co.*, 153 Ill. 2d 534, 545–46 (1992) (reversing grant of summary judgment on rescission claim based on unilateral mistake); *Halla v. Chicago Title & Trust Co.*, 412 Ill. 39, 47 (1952) ("Whether or not appellant used ordinary prudence and due diligence was a question of fact").

¶ 34    There is much more to be learned about this controversy, very little of which we know at the pleading stage, with only a complaint that has not been answered. Could and should plaintiff have done more to confirm with the proper authorities that it had the green light to perform its show in Millenium Park? Of course that could ultimately be the determination. We do not know, at this stage, everything that was said to plaintiff, and everything plaintiff said to Millenium Park and the other relevant authorities. We do not know which agencies and governmental actors

required sign-off and whether plaintiff did all it was required to do. It may surely be the case that plaintiff did everything within its power; it may also be the case that it did not. Discovery would flesh out the relevant information, and a trial judge would ultimately hear both sides' take on the evidence and decide the factual question of plaintiff's due care.

¶ 35      At the stage of a section 2-1401 hearing, however, the trial court's role (and ours on review) is simply to determine whether there is a real controversy on this factual question. There obviously is. There is clearly the possibility that defendants could prevail on the question of due care, which would defeat the complaint's rescission claim. A meritorious defense exists.

¶ 36                           II. Defendants' Due Diligence in Presenting Claim

¶ 37      The other contested element of defendants' section 2-1401 petition is whether defendants exercised due diligence in presenting their claim to the circuit court. See *Airoom*, 114 Ill. 2d at 220-21. Unlike the meritorious-defense element, there is no debate that we review this question for an abuse of discretion. *Walters*, 2015 IL 117783, ¶ 50; see *West Bend*, 2014 IL App (1st) 123213, ¶ 11; *Rocha*, 2012 IL App (1st) 111690, ¶ 10.

¶ 38      Due diligence requires the petitioner to have a reasonable excuse for failing to act within the appropriate time. *Hirsch v. Optima, Inc.*, 397 Ill. App. 3d 102, 110 (2009). A petitioner must show that his failure to defend against the lawsuit resulted from an excusable mistake and that, under the circumstances, he acted reasonably and not negligently when he failed to resist the judgment. *Airoom*, 114 Ill.2d at 222. This requirement may be relaxed when necessary to prevent the unjust entry of default judgments. *Pirman v. A&M Cartage, Inc.*, 285 Ill. App. 3d 993, 1003-04 (1996); see *Borgetti*, 403 Ill. App. 3d at 330 ("equitable powers may require that a judgment be set aside even in the absence of due diligence by a party seeking section 2-1401 relief"); *Halle*, 219 Ill. App. 3d at 569 ("even in the absence of due diligence in responding to the

complaint, equity, justice and good conscience can require that a default judgment be vacated.").

¶ 39    Here, defendants had established a process by which its registered agent, Diversified, would accept service, often via email. Diversified would then alert defendants of the lawsuit filed against them by forwarding any served documents to defendants' officers, who would then pass it along to defendants' counsel. The record reveals that this system worked without incident for six years. This procedure was reasonable and does not indicate any intention to disregard the process of the court.

¶ 40    Nor is there any evidence that Diversified or defendants acted negligently or were otherwise indifferent at any point. To the contrary, once the error was discovered, defendants quickly took steps to correct it, filing the section 2-1401 petition sixteen days after receiving the citation to discover assets. See *Version Allsteel Press Co. v. Mackworth Rees, Division of Avid Indus., Inc.*, 99 Ill. App. 3d 789, 793 (1981) (fact that defendant's filed motion to vacate judgment 19 days after learning of default strengthened conclusion that defendant's initial inaction was excusable).

¶ 41    The court properly considered all the circumstances present at the time the judgment was entered, including that of the defendants and its attorneys, and found the breakdown in service was a reasonable excuse not attributable to defendants' own mistake or negligence. *Airoom*, 114 Ill. 2d at 222. Defendants had no way of realizing that Diversified's computer error had caused a breakdown in the normal service process, and this mitigating circumstance, in the circuit court's view, excused defendants' inaction. *West Bend*, 2014 IL App (1st) 123213, ¶ 15. We cannot say that no reasonable person would adopt the judgment of the circuit court on this question.

¶ 42    Plaintiff says that excusing defendants' inaction here is tantamount to saying that the mere existence of a procedure for handling service will excuse a defendant from any negligence

in the breakdown of that service. But we are not laying down a bright-line rule of any sort. The court obviously must consider all the circumstances attendant upon entry of the judgment, including the conduct of the litigants and their attorneys. *Ameritech Publishing of Illinois, Inc. v. Hadyeh*, 362 Ill. App. 3d 56, 60 (2005). Simply having a process to accept service does not *automatically* excuse the failure to defend a suit, but when an established and well-functioning process breaks down through no fault of defendants, as it did here, the circumstances of that breakdown may reasonably excuse a defendant's inaction. *West Bend*, 2014 IL App (1st) 123213, ¶ 15.

¶ 43    We cannot say that the trial court abused its discretion when it concluded that defendants exercised due diligence in presenting their claim to the circuit court. We agree with the court that the section 2-1401 petition met the liberal standard for vacatur. *Airoom*, 114 Ill. 2d at 227; *West Bend*, 2014 IL App (1st) 123213, ¶ 17.

¶ 44                                      CONCLUSION

¶ 45    The judgment of the circuit court is affirmed. We remand for further proceedings.

¶ 46    Affirmed and remanded.