2025 IL App (1st) 221422-U

No. 1-22-1422

Order filed May 14, 2025

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 92 CR 4156 |
| | ) | |
| JAMES SARDIN, | ) | Honorable |
| | ) | Timothy Joseph Joyce, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court.
Justices Martin and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*: The judgment of the trial court denying petitioner's section 2-1401 petition for
relief from judgment is affirmed.

¶ 2    Petitioner James Sardin appeals the denial of his *pro se* petition for relief from judgment

pursuant to section 2-1401 of the Code of Civil Procedure (Code). 735 ILCS 5/2-1401 (West

2022). On appeal, he contends that he demonstrated a meritorious as-applied proportionate

penalties clause claim and that he is entitled to a new sentencing hearing or, alternatively, an evidentiary hearing on his petition.

¶ 3    For the reasons that follow, we affirm the judgment of the trial court.[1]

¶ 4                                    I. BACKGROUND

¶ 5                                    A. Trial and Sentencing

¶ 6    In 1992, petitioner was charged with the murders of Amjad Khamrzeh and Abdel Abu-Nseir. Following a bench trial, petitioner was found guilty of both murders and sentenced to mandatory natural life in prison. We affirmed his conviction on direct appeal, and now recite the facts from trial and sentencing that are relevant to the instant appeal. See *People v. Sardin*, No. 1-96-1729 (1998) (unpublished order under Illinois Supreme Court Rule 23).

¶ 7    At petitioner's bench trial, Melinda Graham testified that on July 31, 1991, she and her boyfriend, Lindsay Crittle, petitioner, and two other men went to a liquor store located at 7500 South Michigan Avenue in Chicago, Illinois. Graham saw petitioner and the two other men go into the store; one of them was carrying a gun. Five minutes later, Graham heard gunshots and the three men ran out of the store and got into the car. Crittle drove away. Petitioner was holding the gun. Crittle drove to a house belonging to one of the men, where they divided up some money.

¶ 8    Following his arrest, petitioner made a statement to an assistant state's attorney. He claimed that after work on July 31, 1991, he went to Raymond Brown's home where they drank, smoked marijuana, and used cocaine. While there, he, Brown, Crittle, and John Hersey decided to rob a store that had no security cameras. Crittle got a .25 caliber automatic pistol and a car. When he

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

returned, all four men planned the robbery. They determined that petitioner, who was 21 at the time, should hold the gun because he was the oldest, and that Crittle would be the getaway driver. Petitioner went inside the store with Brown and Hersey. Petitioner asked the employee behind the counter for a candy bar, but then brandished the gun and told the employee to put his hands up. Brown warned petitioner that the employee was reaching for something and instructed petitioner to shoot him. Petitioner fired and struck the first employee. Petitioner then told the second employee to empty the register. As petitioner was leaving, he realized the remaining employee had seen their faces, so he turned and shot the second employee. Both men died from their gunshot wounds. Petitioner obtained $75 in cash and $5 in food stamps from the robbery.

¶ 9    The trial court found petitioner guilty of both murders and found him eligible for the death penalty. At sentencing, petitioner provided a report from David Randall, Ph.D., who evaluated him and summarized his personal history. As a child, petitioner was repeatedly abused by his grandparents, mother, and uncle, and at one point he and his brother were placed in foster care. A Department of Children and Family Services (DCFS) caseworker recommended that petitioner and his brother should not be returned to the family home, citing the fact that petitioner and his brother had "whip marks about their entire bodies." The same caseworker noted in a report that even at five years old, petitioner was "very aggressive and talkative," and that he "seemed to have been encouraged to beat up [his brother] and to act in this aggressive manner." The caseworker also observed petitioner's grandmother and uncle encouraging him, at the age of five, to talk about sex and flirt with women. In her estimation, "the family is very disturbed. All are in need of treatment. The adults all appear to have a problem with alcohol."

¶ 10     According to IQ testing performed in 1994, petitioner's IQ was 74, and that 4% of the population would be expected to have a lower IQ score. Petitioner was diagnosed with polysubstance dependence and a mixed personality disorder. Dr. Randall recommended against the imposition of the death penalty, concluding that petitioner was "amenable to rehabilitation if sentenced to the alternative. In the context of his life his crime is an aberration. He is remorseful."

¶ 11     The trial court declined to impose the death penalty and instead sentenced petitioner to natural life in prison without parole based on petitioner's commission of multiple murders, reasoning that petitioner "is a man who is not possessed of a heart that is malignant and against humanity. He is a poor decision maker." See 730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 1996).

¶ 12                         B. Collateral Proceedings

¶ 13     On March 15, 1999, petitioner filed a *pro se* petition for postconviction relief which alleged ineffective assistance of trial and appellate counsel, and that the State coerced Graham into perjuring herself at trial. That petition was summarily dismissed and we affirmed. See *People v. Sardin*, No. 1-99-2024 (2001) (unpublished order under Illinois Supreme Court Rule 23). Petitioner subsequently filed four more successive postconviction petitions in 2000, 2002, 2011, and 2012. Each such petition was dismissed by the trial court. See *People v. Sardin*, No. 1-01-0971 (Sept. 20, 2002) (dispositional order); *People v. Sardin*, No. 1-04-3724 (2007) (unpublished order under Illinois Supreme Court Rule 23); *People v. Sardin*, No. 1-11-3261 (2013) (unpublished summary order under Illinois Supreme Court Rule 23(c)); and *People v. Sardin*, No. 1-13-0473 (2014) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 14     On May 26, 2010, petitioner filed a "motion to vacate judgment as void and set aside conviction," which was dismissed by the trial court. We allowed appellate counsel leave to

withdraw and affirmed on June 29, 2012. See *People v. Sardin*, No. 1-10-3049 (2012) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 15   On July 7, 2020, petitioner filed a fifth successive postconviction petition in which he argued that his mandatory natural life sentence violated the proportionate penalties clause of the Illinois Constitution. On December 7, 2020, the trial court denied petitioner leave to file the petition. We affirmed, holding that he failed to make the requisite showing of cause. *People v. Sardin*, 2023 IL App (1st) 210116-U, ¶¶ 32-33.

¶ 16                                C. Instant Appeal

¶ 17   On June 23, 2022, petitioner filed a petition seeking relief under section 2-1401 of the Code, claiming that his mandatory natural life sentence was void. Specifically, petitioner argued that the mandatory natural life provision that precipitated his sentence violated the proportionate penalties clause of the Illinois Constitution, both facially and as applied to him. The petition contained no facts particular to petitioner beyond the offenses for which he was convicted and the length of his sentence. Instead, petitioner claimed that his sentence was unconstitutional because it deprived him of an opportunity to be restored to useful citizenship.

¶ 18   On August 11, 2022, the trial court asked the State if it wished to "weigh in" on the petition, and it declined to do so. The State did not file any pleadings responsive to the petition. The same day, the trial court issued a written ruling denying the petition. Comparing petitioner's case to that of *People v. Miller*, 202 Ill. 2d 328 (2002) (*Leon Miller*), the trial court reasoned that petitioner's sentence did not shock the moral sense of the community because, distinct from *Leon Miller*, petitioner was an active participant responsible for shooting both of the victims. The trial court wrote, "Nothing about the sentence of natural life without parole shocks the moral sense of the

community in the face of a brazen armed robbery against two defenseless persons, and [petitioner's] individual conduct in executing those victims by gunshot."

¶ 19    Petitioner filed a notice of appeal on September 9, 2022, and this appeal followed.

¶ 20                                    II. ANALYSIS

¶ 21    Petitioner now argues on appeal that the trial court erred in denying his section 2-1401 petition because it stated a valid claim that his mandatory natural life sentence violated the proportionate penalties clause as applied to him.[2] Specifically, petitioner argues on appeal that his incomplete brain development at the age of 21 and his intellectual disability, as well as the abuse he suffered as a child, impaired his ability to exercise judgment during the offense.

¶ 22    Section 2-1401 of the Code provides a comprehensive statutory procedure by which final orders and judgments may be challenged more than 30 days after their entry. *People v. Pinkonsly*, 207 Ill. 2d 555, 562 (2003). Although section 2-1401 petitions are a civil remedy, its remedial powers apply to judgments in criminal cases. *People v. Haynes*, 192 Ill. 2d 437, 460-61 (2000). A section 2-1401 petition is the forum in a criminal case in which to correct all errors of fact occurring in the prosecution of a cause, unknown to the petitioner and court at the time judgment was entered, which, if then known, would have prevented its rendition. *Id*. at 461. Section 2-1401 of the Code permits either a factual or legal challenge to a final judgment if certain procedural and statutory requirements are satisfied. *People v. Thompson*, 2015 IL 118151, ¶ 44 (citing *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶¶ 37-51).

---

[2]On appeal, petitioner has abandoned the claim that the provision that mandates life in prison for multiple murders is facially unconstitutional.

¶ 23    To obtain relief under section 2-1401, one must affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief. *People v. White*, 2025 IL 129767, ¶ 36. A petition brought to vacate a void order is not amenable to the due diligence, meritorious defense, and two-year time requirements. *Rockford Financial Systems, Inc. v. Borgetti*, 403 Ill. App. 3d 321, 324 (2010).

¶ 24    A section 2-1401 petition must be supported by an affidavit or other appropriate showing as to matters not of record. 735 ILCS 5/2-1401(b) (West 2022). While section 2-1401 petitions should be given a liberal construction to prevent an unjust result, the ambit of section 2-1401 relief must not be broadened to such an extent that principles of equity and an ordered concept of justice are diluted. *McGinley Partners, LLC v. Royalty Properties, LLC*, 2018 IL App (1st) 172976, ¶ 32.

¶ 25    Where the State fails to file a responsive pleading to a section 2-1401 petition, that constitutes an admission of all well-pleaded facts and the trial court may decide the case on the pleadings, affidavits, exhibits, and supporting material before it, including the record of the prior proceedings. *People v. Vincent*, 226 Ill. 2d 1, 9 (2007). When the trial court enters judgment on the pleadings in a section 2-1401 proceeding, that order is reviewed *de novo*. *Id*. at 18.

¶ 26    The State has argued that the petition does not contain sufficient factual allegations to state a proper section 2-1401 claim. Because this issue is dispositive, we address it first. Specifically, the State argues that petitioner did not plead any facts in his petition that allege how the mandatory natural life statute is unconstitutional as applied to him. It is true that petitioner's section 2-1401 petition is devoid of any factual allegations particular to him and his case beyond the offenses for

which he was convicted and the nature of his sentence. Section 2-1401 petitions are analogous to civil complaints and thus vulnerable to sufficiency challenges for failure to state a claim. *Vincent*, 226 Ill. 2d at 8.

¶ 27    The State failed to make such a sufficiency challenge in the trial court and petitioner argues that the State has waived this argument. Typically on appeal, any claim of insufficiency will be deemed to have been defaulted. *Id.* "However, as in any civil action, if the facts alleged cannot state a legal basis for the relief requested, *i.e.*, the petition is insufficient as a matter of law, the pleading may be challenged at any time, even on appeal." *Id.*

¶ 28    Petitioner also insists that the State's failure to answer the petition constituted an admission of all well-pleaded facts, and the trial court could decide the case based on the pleadings, affidavits, exhibits, and supporting material before it, including the record of the prior proceedings. See *Vincent*, 226 Ill. 2d at 9. But petitioner's pleading contains virtually no facts to be admitted by way of the State's failure to respond. It is one thing for a court to consider the record of prior proceedings if a petition's factual allegations are not supported by affidavits or other exhibits. It is another to require a court to use the record of prior proceedings to assume the substance of petitioner's factual allegations that he failed to plead.

¶ 29    If this was no distinction, then the requirement that a petitioner "*affirmatively* set forth specific factual allegations" supporting a section 2-1401 claim would be meaningless (emphasis added). See *People v. White*, 2025 IL 129767, ¶ 36. While petitioner's brief argues an as-applied challenge based on *Miller v. Alabama*, 567 U.S. 460 (2012), its progeny, and the facts of petitioner's upbringing, that is simply not the substance of petitioner's pleading that is at issue here. Though we are commanded to construe petitions liberally, noting that the pleading was

drafted by a *pro se* individual, petitioner has not supplied us with any basis on appeal to conclude that we may construe a petition so liberally that we may assume the operative factual allegations that *might have* comprised his as-applied challenge.

¶ 30     An as-applied challenge requires a showing that the statute is unconstitutional as it applies to the specific facts and circumstances of the challenging party. *People v. Harris*, 2018 IL 121932, ¶ 38. Petitioner's section 2-1401 petition contains no such showing as it contains no allegations about him, his upbringing, his brain development, or intellectual disability that would permit a conclusion that his mandatory natural life sentence is unconstitutional as applied to him. Instead, the petition alleges only generally that petitioner's mandatory natural life sentence is unconstitutional because it deprives him of an opportunity for rehabilitation. In substance, petitioner's pleading, while it uses the phrase "as-applied," raised a facial challenge to the relevant sentencing provision that was completely divorced from the facts of petitioner's case—a claim that was abandoned on appeal.

¶ 31     Ultimately, we agree with the State. Petitioner has failed to allege even basic facts particular to him that, if true, would constitute a valid claim that the applicable sentencing statute, as applied to him, violates the proportionate penalties clause. The pleading provides no basis to conclude that the mandatory natural life provision in question shocks the moral sense of the community when applied to petitioner. Accordingly, petitioner's claim for relief under section 2-1401 of the Code fails and the trial court did not err in denying his petition. Given our disposition, we need not address the State's remaining argument that petitioner's claim is procedurally barred or the parties' arguments regarding the merits of petitioner's claim.

¶ 32                               III. CONCLUSION

¶ 33     For the above reasons, we affirm the judgment of the trial court denying petitioner's section

2-1401 petition for relief from judgment.

¶ 34     Affirmed.